UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
CITAK & CITAK, DONALD CITAK and
BURTON CITAK,

       Plaintiffs,     Civil Action No. 07 CIV 5459

     -against-

THE ST. PAUL TRAVELERS COMPANIES,
INC. a/k/a ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,

       Defendant.
---------------------------------------------------------x

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

Of Counsel:
Lisa L. Shrewsberry
Jonathan R. Harwood

TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP
Attorneys for Defendants
Mid-Westchester Executive Park
Seven Skyline Drive
Hawthorne, New York 10532
(914) 347-2600

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ........................................... 1

II.  STATEMENT OF FACTS ............................................... 1

III. ARGUMENT ......................................................... 5

   THIS MATTER MEETS THE AMOUNT IN
   CONTROVERSY REQUIREMENT OF 28 U.S.C. 1441 ......................... 5

IV.  CONCLUSION ...................................................... 10

# TABLE OF AUTHORITIES

**CASES**

*Ciprofloxacin Hydrochloride Antitrust Litigation,*
    166 F.Supp. 740, (E.D.N.Y. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Nazario v. Fortunato & Fortunato,*
    *PLLC, 32 A.D.3d 692*, 822 N.Y.S. 2d. 236. (1ST Dep't 2006) . . . . . . . . . . . . . . . . . . . . . . 6

*Pollock v. Trustmark Insurance Co.,*
    367 F.Supp.2d 293 (E.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**STATUTES**

28 U.S.C.§1441 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 9

## PRELIMINARY STATEMENT

This memorandum of law is submitted on behalf of defendant The St. Paul Travelers Companies, Inc. a/k/a St. Paul Fire and Marine Insurance Company (referred to hereinafter as "St. Paul" or "defendant") in opposition to plaintiff's motion to remand this matter to the Supreme Court of the State of New York, County of New York.

Plaintiff's motion to remand is based on the assertion that this matter does not meet the amount in controversy requirement of 28 U.S.C. §1441. According to plaintiff, the amount at issue is only $60,000 and it cannot be increased by reference to attorney's fees. In making this argument, however, plaintiffs ignore the fact that the attorneys' fees at issue are amounts plaintiffs claim are owed pursuant to the terms of an insurance contract. Such amounts are relevant to determining the amount in controversy. In addition, documents provided by plaintiffs' counsel in the course of this litigation demonstrate that the potential damages at issue far exceed $75,000.

## STATEMENT OF FACTS

This declaratory judgment action was commenced in the Supreme Court of the State of New York, County of New York by plaintiff's, Citak & Citak ("the Citak firm"), Donald Citak and Burton Citak (collectively "plaintiffs"). A copy of the summons and complaint, and the exhibits thereto, is annexed as Exhibit A to the Declaration of Jonathan R. Harwood. Plaintiffs seek a declaration of coverage for a claim made against the CItak firm by a former client, under Lawyers Professional Liability Policy no. 507JB0670, issued to the Citak firm by St. Paul Travelers ("the St. Paul policy"). The St. Paul policy was in effect for the policy period of April 28, 2006 to April 28, 2007. Harwood Dec., Ex. B.

The claim against the Citak firm was asserted by Stuart and Carina Marton, former clients

1

of the Citak firm. On or about November 2, 2006, the Martons commenced an action against the Citak firm in the Supreme Court of the State of New York, County of New York. A copy of the complaint in that action (referred to hereinafter as "the *Marton* Complaint") is annexed as Exhibit C to the Harwood Declaration. According to the *Marton* Complaint, the Martons retained the Citak firm to represent them in a breach of contract action against a contractor retained to perform renovations for the Martons. Harwood Aff., Ex. C at ¶¶6-8. In the *Marton* complaint, plaintiffs allege that the contract in question contained the following terms: any claim under the contract was to be initiated within 21 days of the occurrence of the event in question or 21 days after the claimant became aware of the condition; claims under the contract were to be referred to the Martons' architect for decision and that such a decision was a condition precedent to any mediation, arbitration or legal proceeding; mediation pursuant to the Construction Industry Mediation Rules of the American Arbitration Association (AAA) was a condition precedent to arbitration or any legal or equitable proceedings; and a claim not resolved by mediation must be arbitrated pursuant to the Construction Industry Arbitration Rules of the AAA. Harwood Dec., Ex. C at ¶¶11-13.

According to the *Marton* Complaint, the Citak firm failed to send notice of the claim to the contractor and the Marton's architect within the required time and also failed to initiate mediation or arbitration proceedings, as required by the contract. Harwood Dec., Ex. C at ¶15. It is further alleged that the Citak firm commenced an action in the Supreme Court of the State of New York, County of New York without first submitting the claim to the Marton's architect or commencing mediation or arbitration, as required by the contract. *Id.* at ¶18. In response, the contractor's attorneys moved to dismiss the complaint on the grounds that the Martons had not complied with the mediation and arbitration provisions of the contract and because the time in which to submit any

2

complaints to the architect, as required by the contract, had elapsed. *Id.* at ¶20-21. In October 2003, the court granted the motion to dismiss, based on the failure to mediate or arbitrate. *Id.* at ¶22.

The Martons further alleged that, after the suit was dismissed the Citak firm submitted a Demand for Arbitration and a request for a prior mediation to the AAA. Harwood Dec., Ex. C at ¶23. Upon receipt of the Demand for Arbitration a case manager for AAA contacted the Citak firm and advised that the arbitration clause had been crossed out in the copy of the contract provided with the demand and requested a Submission of Dispute Resolution form, signed by both parties. *Id.* at ¶¶26-27. In December 2003, the case manager allegedly wrote to the Citak firm again and advised that it was returning the Demand for Arbitration and the filing fee, as the information it requested had not been provided. *Id.* at ¶29. It is alleged that the Citak firm met subsequently with the Martons and advised that they would refile the case in court if the contractor did not agree to arbitration. *Id.* at ¶30. The Martons were not advised, however, that the Citak firm had submitted the wrong contract to AAA. *Id.* at ¶31.

While the Citak firm then requested that the contractor's counsel sign a submission to dispute resolution form, the contractor's counsel did not return it and the Citak firm did not take any further steps to commence a mediation, arbitration or to return the case to the Supreme Court. Harwood Dec. Ex. C at ¶¶32-33. Additionally, the Martons allege that the Citak firm failed to advise them that AAA had closed its file and returned the Demand for Arbitration. *Id.* at ¶34. The Martons further allege that they first learned of the dismissal of the arbitration in November 2004, through a case manager at AAA. *Id.* The *Marton* complaint seeks $60,000 in damages. *Id.* at p.9.

Documents provided by plaintiffs' counsel in the course of the instant litigation provide additional insight into the potential damages at issue. The relevant documents were filed in state

3

court as part of the Marton's efforts to modify and, as modified, confirm an arbitration award they received against the contractor. According to the documents, on May 7, 2007 the Martons received an arbitration award of $64,567.32, which includes $2,200 in arbitration costs. Harwood Decl., Ex. D. The award also granted post-award interest of 9% per year. In addition, in seeking to modify the arbitration award, the Martons have requested an additional award of approximately $36,000 in pre-award interest. *Id.* Their initial request for pre-award was denied by the arbitrator because, according to the Martons, the arbitrator determined that there was an unnecessary and lengthy delay in commencing the arbitration that was not caused by the contractor. *Id.* In seeking to justify an award of pre-award interest, the Martons argue that the delay was caused by the errors of the Citak firm. *Id.* All of these factors, as discussed below, leave no doubt that this matter reaches the $75,000 jurisdictional threshold.

The Citak firm alleges that it will retain independent counsel to represent it in the *Marton* action in the event the issues raised in this matter are not resolved before it is necessary to submit an answer in that action. Harwood Dec., Ex. A at ¶19. In addition to seeking a declaration of coverage, the Citak firm seeks repayment of all legal fees it incurs in defending the *Marton* action, other than the policy's $5,000 deductible. *Id.* at ¶21. The Citak firm also seeks reimbursement for the amounts it expends in prosecuting the instant action. *Id.* at p.7.

## ARGUMENT

## THIS MATTER MEETS THE AMOUNT IN CONTROVERSY REQUIREMENT OF 28 U.S.C. 1441

In moving to remand this case to state court, plaintiffs claim that it does not meet the amount in controversy requirements of 28 U.S.C. §1441, which requires that the amount at issue be at least $75,000. In support of this argument, plaintiffs allege that the amount at issue in the *Marton* action is only $60,000 and that attorneys' fees cannot be considered in determining whether the jurisdictional minimum has been satisfied. In making this argument, plaintiffs cite to authority from the Second Circuit holding that attorneys' fees are not considered part of the amount in controversy. Plaintiffs also acknowledge, however, that exceptions to this exist where the attorneys' fees are recoverable by statute or agreement between the parties. *See In re Ciprofloxacin Hydrochloride Antitrust Litigation*, 166 F.Supp. 740, 755 (E.D.N.Y. 2001).

As an initial point, this rule is not applicable to the instant matter. In propounding this rule, the courts were dealing with efforts to increase the amount in controversy by including requests for attorneys' fees incurred in prosecuting the removed action. That, however, is not the case here. Rather, in its complaint the Citak firm contends that it is entitled to coverage under the St. Paul policy for the *Marton* action. This, it is alleged, includes the costs of defending against that action. As such, the Citak firm specifically requests that it be reimbursed for any amounts it expends in defending against that action, pursuant to its alleged rights under the insurance policy. This amount, therefore, is actually part and parcel of the Citak firm's request for damages in this case, not an additional effort to obtain attorneys' fees as a prevailing party.

Moreover, it is highly likely that the cost of defending the *Marton* action will reach $20,000. That action sounds in legal malpractice, which requires that the Martons prove both that the Citak firm was negligent in its representation of them and that they would have prevailed on their claims against the contractor but for that negligence. *Nazario v. Fortunato & Fortunato PLLC*, 32 A.D.3d 692, 822 N.Y.S.2d 236 (1st Dep't 2006). In order to satisfy this standard, the Martons will have to establish that they would have prevailed in the claim against the contractor. *Id*. This essentially requires proving two cases, which can be a fairly expensive endeavor. It is thus highly likely that the Citak firm will incur $20,000 defense costs in the Marton action.[1] This would satisfy the amount in controversy requirement.

Moreover, even if the rule cited by plaintiff was applicable, this matter would fall within the exception for attorneys' fees agreed to by contract. Again, the attorneys' fees plaintiffs seek include amounts they claim St. Paul is obligated to pay, pursuant to the St. Paul Policy, to defend the *Marton* action. An insurance policy, at its most basic level, is a contract and plaintiffs here are seeking to enforce that contract by either seeking to have St. Paul defend them in the *Marton* action or obtaining reimbursement for amounts they will incur in defending that action. The attorneys' fees they seek are thus allegedly owed pursuant to a contract and properly considered in calculating the reasonable exposure posed by this matter.. Plaintiffs misconstrue this requirement by arguing that there is no agreement between them and the Martons to pay the Martons' attorneys' fees. This, according to plaintiffs, renders attorneys' fees incurred in that action irrelevant. This argument completely misses

---

[1] As noted above, the *Marton* action states that the damages at issue are $60,000 and the plaintiffs herein state that they are entitled to reimbursement of all defense costs incurred in defending that case that are in excess of their $5,000 deductible. The plaintiffs would thus need to incur $20,000 in defending the *Marton* action to satisfy the jurisdictional amount.

the point. The focus here must be on the amount of attorneys' fees the plaintiffs here seek to recover from St. Paul and there is no dispute about the fact that the plaintiffs in the instant action seek repayment of any amounts they incur in defending themselves in the *Marton* action and they claim they are entitled to such a reimbursement pursuant to the terms of the insurance contract with St. Paul's.

Plaintiffs' discussion of *Pollock v. Trustmark Insurance Co.*, 367 F.Supp.2d 293 (E.D.N.Y. 2005) does not alter this result. In that case, the plaintiff sought payment of $55,000 he was allegedly owed under a disability policy, as well as attorneys' fees. The defendant removed the action to federal court, asserting that the combination of the benefits and attorneys' fees sought by plaintiff would exceed $75,000. In finding that it was unreasonable to conclude that the plaintiff would incur $20,000 in attorneys' fees, the court noted that plaintiff had brought suit pursuant to a statute that allowed for the recovery of such fees. *Pollock*, 367 F.Supp.2d at 298. Critically, the statute at issue only allowed for recovery of up to $1,000 in attorneys' fees for a defendant's willful or knowing violation of the statute. *Id.*, fn.5. The court determined that it was thus unreasonable to include the potential for an additional $19,000 in attorneys' fees in determining if the amount in controversy requirement was met. The same issue does not exist here, where there is no limit on the amount of plaintiffs' claim for reimbursement of costs they incur in defending the *Marton* action. Moreover, as discussed above, it is hardly unreasonable to conclude that the plaintiffs will incur $20,000 to defend that legal malpractice action.

Finally, plaintiffs have recently provided St. Paul with documentation that confirms that this matter involves potential damages far in excess of $75,000. Specifically, plaintiffs have provided St. Paul with a copy of an order to show cause filed by the Martons in the Supreme Court of the State

7

of New York, County of New York. Harwood Decl., Ex. E. In that order to show cause, the Martons seek to modify and, as modified, enforce an arbitration award they have apparently obtained against the contractor. The information submitted in support of the order to show cause demonstrates that the *Marton* action involves potential damages that far exceed $75,000.

According to the petition submitted in support of the order to show cause, in September 2006 the Martons commenced the arbitration that the Citak allegedly failed to prosecute. Harwood Decl., Ex. E. The arbitration demand originally sought $60,000 in damages. *Id.* The demand was later amended to seek $63,817.32 plus interest from March 31, 2001, the date of the alleged breach by the contractor. *Id.* After the arbitration, which was held in the absence of the contractor, who failed to appear, the Martons were awarded $62,367.32 in damages and interest and $2,200 in arbitration fees, for a total of $64,567.32. *Id.* The award denied the Marton's request for pre-award interest of 9% per year from March 31, 2001 and the Martons sought clarification of that part of the decision that denied the request for pre-award interest. *Id.* In the Arbitrator's Award, submitted as an exhibit to the order to show cause, the arbitrator explains that the request for pre-award interest was denied because "the 6 years and 175 days delay in bringing this dispute to arbitration is allegedly the result of a procedural and filing error by Claimants' former attorney [the Citak firm]. Respondents bear no responsibility for this late re-filing of the claims for consequential interest claim." *Id.* As a result, the arbitrator denied the Marton's request for $36,632.11 in pre-award interest. In an affidavit submitted in support of the request to modify the arbitrator's award, Mr. Marton confirms that he places the blame for the delay in filing the arbitration with the Citak firm. *Id.*

It is clear, from these documents, that the Marton's claim against their contractor totals $101,199.43, well in excess of the applicable $75,000 jurisdictional minimum. It is equally clear

8

that the Martons place the blame for their inability to collect this amount on the alleged failure of the Citak firm to prosecute their claim against the contractor. In confirming these allegations, Mr. Marton states that he did not learn that the AAA had rejected the initial arbitration request until November 2004. Moreover, the arbitrator based his rejection of the pre-award interest on the fact that any delay in pursuing the claim was allegedly caused by the actions of the Citak firm. It is thus clear that the Martons blame the Citak firm for their inability to collect pre-award interest. The lost pre-award interest is thus an appropriate part of the damages the Martons will seek from the plaintiffs in this action. Moreover, as evidenced by the order to show cause, the contractor did not participate in the arbitration and is unlikely to satisfy any judgment that is entered. As such, the Martons will likely continue to seek payment of that uncollectible award from the plaintiffs herein based on their failure to prosecute the claim in a timely fashion.

In light of the foregoing, it is clear that this matter reasonably involves damages of at least $75,000. It is thus respectfully requested that the court deny plaintiffs' motion to remand this case for failure to meet the amount in controversy requirements of 28 U.S.C. §1441.

## CONCLUSION

Based upon the foregoing, St. Paul respectfully submits that it is entitled to an order, denying plaintiff's motion to remand this matter to state court, along with such other relief the court deems appropriate.

Dated: August 31, 2007
       Hawthorne, New York

                        TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP

                        _____
                        Lisa L. Shrewsberry (LS 1597)
                        Jonathan R. Harwood (JH 9060)
                        Attorneys for Defendant
                        The St. Paul Travelers Companies, Inc. a/k/a
                        St. Paul Fire and Marine Company
                        Mid-Westchester Executive Park
                        Seven Skyline Drive
                        Hawthorne, New York 10532
                        (914)347-2600

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK            )
                             ) ss.:
COUNTY OF WESTCHESTER        )

Elvira Porelli, being duly sworn, deposes and says:

That deponent is not a party to the within action and is over 18 years of age.

That on the 31st day of August 2007, deponent served the within **MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND** upon the attorney(s) for the respective party(ies) in this action, at the address listed below, such address designated by said attorney for that purpose via **Electronic Case Filing System and United States Postal Service** by depositing same in a properly addressed wrapper, in an official depository under the exclusive care and custody of United States Postal Service.

TO:   Peter Wessel, Esq.
      Law Office of Peter Wessel, PLLC
      270 Madison Avenue, Suite 1203
      New York, New York 10016
      Mineola, New York 11501
      E-mail: Peterwessel@wessellaw.com

                                                    _____
                                                    Elvira Porelli

Sworn to before me this
31st day of August, 2007

_____
Notary Public

CLAUDINE N. BONCI
Notary Public, State of New York
No. 01BO5015056
Qualified in Westchester County
Commission Expires July 12, 2011