UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CITAK & CITAK, DONALD CITAK and
BURTON CITAK,                                                                    STIPULATION

                         Plaintiffs,

    - against -                                                                 # 07 CIV 5459 (WHP)

THE ST. PAUL TRAVELERS COMPANIES, INC.
a/k/a ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,

                         Defendants.
------------------------------------------------------------------X

IT IS HEREBY STIPULATED AND AGREED, by and between the attorneys for Plaintiffs and Defendant that the annexed Exhibits numbered 1 through 6 shall, for all purposes of the litigation, be deemed to be part of Plaintiffs' Complaint against Defendants herein, as if they were initially affixed to the Complaint filed in the New York State Supreme Court under Index No. 601797/2007 on May 30, 2007.

Dated: New York, NY
         August 8, 2007

LAW OFFICE OF PETER WESSEL, PLLC          TRAUB LIEBERMAN STRAUS &
                                                                                 SHREWSBERRY LLP

By: _____                             By: _____
     PETER WESSEL                                                   JONATHAN R. HARWOOD
     Attorney for Plaintiffs                                  Attorney for Defendant
     CITAK & CITAK, DONALD CITAK and           THE ST. PAUL'S TRAVELERS
     BURTON CITAK                                                COMPANIES, INC.
     270 Madison Avenue, Suite 1203               Seven Skyline Drive, Suite 165
     New York, NY 10016-0601                       Hawthorne, NY 10532-2185
     (212) 532-9700                                            (914) 347-2600

# EXHIBIT "1"



St Paul Travelers 1st Choice℠ for Lawyers

# LAWYERS PROFESSIONAL LIABILITY POLICY

A Custom Insurance Policy Prepared for:

Citak & Citak
Attorneys at Law

LA000 Ed. 6-04  Printed in U.S.A.
© 2004 The St. Paul Travelers Companies, Inc. All Right Reserved

St. Paul Travelers 1st Choice for Lawyers

**LAWYERS PROFESSIONAL LIABILITY**
**DECLARATIONS PAGE**


ST PAUL TRAVELERS

POLICY NUMBER: 507JB0670                                   ISSUE DATE: 03/27/2006

**THIS IS A CLAIMS-MADE POLICY. PLEASE READ IT CAREFULLY.**

INSURING COMPANY:    St. Paul Fire and Marine Insurance Company, St. Paul, Minnesota

1. NAMED INSURED:        Citak & Citak
                         Attorneys at Law

2. PRINCIPAL ADDRESS:    270 Madison Avenue, Suite 1203
                         New York, NY  10016

3. POLICY PERIOD:        From: 04/28/06          To: 04/28/07
                         Inception               Expiration
                         (12: 01 A. M. Standard Time at the Principal Address Stated Above)

4. LIMITS OF LIABILITY:  $ 1,000,000   EACH CLAIM
                         $ 1,000,000   POLICY AGGREGATE
                         "Claims Expenses" are in addition to the Limits of Liability.

5. DEDUCTIBLE:           $ 5,000  EACH CLAIM
                         $ N/A    POLICY AGGREGATE
                         Deductible Applies to Indemnity only.

6. PREMIUM:              $ 7,038.00

7. RETROACTIVE DATE:     FULL

8. FORM AND ENDORSEMENT NUMBERS ATTACHING TO THIS POLICY AT ISSUANCE:

   SEE ATTACHED FORMS LIST #40705

This policy consists of the Lawyers Professional Liability Declarations, Coverage Form, Endorsements listed above (or attached after inception) and the Application and any applicable supplements or attachments.

LA002 Ed. 12-04  Printed in U.S.A.
© 2004 The St. Paul Travelers Companies, Inc. All Right Reserved

Page 1 of 2

NAME AND ADDRESS OF PRODUCER:

JLT Services Corporation
13 Cornell Rd
Latham NY 12110

*Patricia A. Wilson*
───────────────────────────
Authorized Representative

In Witness Whereof, the Insurer has caused this policy to be signed by its President and Secretary and countersigned on the Declarations Page by a duly authorized agent of the Insurer.

*Jay S. Fishman*
President

*[signature]*
Secretary

St. Paul Travelers 1st Choice<sup>sm</sup> for Lawyers
LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

# NEW YORK – LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

**NOTICE – THIS IS A CLAIMS-MADE POLICY WITH "CLAIMS EXPENSES" IN ADDITION TO THE LIMITS OF LIABILITY. PLEASE READ IT CAREFULLY.**

THIS IS A CLAIMS-MADE POLICY. IF THE POLICY CONTAINS A RETROACTIVE DATE, THEN THE POLICY PROVIDES NO COVERAGE FOR "CLAIMS" FOR ANY ERROR, OMISSION, NEGLIGENT ACT OR "PERSONAL INJURY" IN THE RENDERING OR FAILURE TO RENDER "PROFESSIONAL LEGAL SERVICES" COMMITTED PRIOR TO THE POLICY INCEPTION DATE OR THE RETROACTIVE DATE. THIS POLICY APPLIES ONLY TO "CLAIMS", OR CIRCUMSTANCES REPORTED IN ACCORDANCE WITH SECTION IX-CONDITIONS B, FIRST MADE AGAINST THE INSUREDS DURING THE "POLICY PERIOD", ANY SUBSEQUENT RENEWAL OF THE POLICY OR APPLICABLE EXTENDED REPORTING PERIOD AND REPORTED IN WRITING TO US PURSUANT TO THE TERMS HEREIN. THE LIMIT OF LIABILITY AVAILABLE TO PAY "DAMAGES" OR SETTLEMENTS SHALL NOT BE REDUCED BY AMOUNTS INCURRED AS "CLAIMS EXPENSES". ANY "CLAIMS EXPENSES" THAT ARE INCURRED SHALL NOT BE APPLIED AGAINST THE APPLICABLE RETENTION. WE SHALL HAVE THE RIGHT AND DUTY TO DEFEND ANY "CLAIM" AGAINST THE INSUREDS UNDER THIS POLICY.

COVERAGE FOR THE POLICY CEASES UPON TERMINATION OF COVERAGE EXCEPT FOR THE BASIC EXTENDED REPORTING PERIOD, UNLESS A SUPPLEMENTAL EXTENDED REPORTING PERIOD IS PURCHASED. POTENTIAL COVERAGE GAPS MAY ARISE UPON EXPIRATION OF THE SUPPLEMENTAL EXTENDED REPORTING PERIOD. IN GENERAL, THE NATURE OF CLAIMS-MADE COVERAGE IS SUCH THAT, DURING THE FIRST SEVERAL YEARS OF THE "CLAIMS-MADE RELATIONSHIP", CLAIMS-MADE RATES ARE GENERALLY LOWER THAN OCCURRENCE RATES (ASSUMING THAT COVERAGE ON AN OCCURRENCE BASIS IS AVAILABLE FOR THE INSURANCE IN QUESTION), AND YOU MAY EXPECT SUBSTANTIAL ANNUAL PREMIUM INCREASE, INDEPENDENT OF OVERALL RATE LEVEL INCREASES, UNTIL THE "CLAIMS-MADE RELATIONSHIP" REACHES MATURITY.

Throughout the policy the words "you" and "your" refer to the "Named Insured" shown in the Declarations. The words "we", "us", and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II – INSURED**.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION VIII –DEFINITIONS**.

## SECTION I – INSURING AGREEMENTS

We will pay on behalf of an insured "damages" and "claims expenses" for which "claim" is first made against an insured and reported to us within the "policy period", any subsequent renewal of the policy by us or applicable Extended Reporting Period. Such "damages" must arise out of an error, omission, negligent act or "personal injury", in the rendering of or failure to render "legal services" for others by you or on your behalf. The error, omission, negligent act or "personal injury" must occur on or after the retroactive date stated in the Declarations, if any.

We will have the right and duty to defend any "claim" or "suit" against an insured seeking "damages" to which this insurance applies, even if any of the allegations of the "claim" or "suit" are groundless, false or fraudulent. We may also make such investigation and, with your written consent, such settlement of any "claim" or "suit" we deem appropriate.

If an insured does not agree with a settlement recommended by us, our Limit of Liability is reduced to the total of the amount for which the "claim" or "suit" could have been settled plus all "claims expenses" incurred up to the time we made

LA005 Ed. 4-05
© 2005 The St. Paul Travelers Companies, Inc. All Right Reserved                Page 1 of 13

our recommendation. We shall have the right to withdraw from further defense of the "claim" or proceeding by tendering control of said defense over to you.

We will not be obligated to pay "damages" or "claims expenses" or to defend any "claim" or "suit" after the applicable Limit of Liability has been exhausted by payment made by us towards judgments and/or settlements.

## SECTION II — INSURED

Each of the following is an insured:

A. The "Named Insured" shown in the Declarations; and

B. Any person who was, is now or hereafter becomes a partner, officer, director, employee, principal, shareholder or member of the "Named Insured", whether named or not, but only while acting in the scope of their duties as such; and

C. Any lawyer retained as Of Counsel by you, but only with respect to "professional legal services" performed for you or on your behalf or on behalf of a "predecessor firm"; and

D. The estate, heirs, executors, administrators, and legal representatives of any insured in the event of such insured's death, incapacity, insolvency or bankruptcy, but only to the extent that such insured would otherwise be provided coverage under this policy; and

E. Any "predecessor in business" or person who was a partner, officer, director, employee, principal, shareholder or member of any "predecessor in business" who provided "professional legal services" on behalf of any "predecessor in business", provided a request for such coverage is made to us and accepted in writing prior to the inception of such coverage; and

F. Any organization you newly acquire or form is an insured under this policy only when we provide you our written acceptance. This provision applies to any partner, officer, director, employee, principal, shareholder or member of such newly acquired or formed organization.

## SECTION III — LIMITS OF LIABILITY

Regardless of the number of insureds under this policy, the number of persons or organizations seeking "damages" or the number of "claims" made, our liability is limited as follows:

A. The amount stated in the Declarations as applicable to each "claim" is the most we will pay for all "damages" arising out of the same or related errors, omissions, negligent acts or "personal injury". For the purposes of determining our Limit of Liability, all "claims" arising out of the same or related errors, omissions, negligent acts or "personal injury" will be deemed to have been made when the first of such "claims" is made whether such demands are made against one or more insureds or whether such demands are made by one or more persons and will be treated as a single "claim".

B. The amount shown in the Declarations as Policy Aggregate is the most we will pay for all "damages" for all "claims" to which this insurance applies.

## SECTION IV — DEDUCTIBLE

A. Our obligation to pay "damages" under this policy applies only to the amount of "damages" which are in excess of the Deductible amount stated in the Declarations.

B. The deductible amount applies to all "damages" incurred as the result of each "claim". The deductible amount does not apply to "claims expenses" incurred as the result of each "claim".

C. The terms of the policy, including those with respect to our right and duty to defend "suits" and your duties in the event of a "claim", "suit" or circumstances which may give rise to a "claim", apply irrespective of the application of the deductible.

D. We may pay any part or all of the deductible amount. Upon notification of the action we have taken, you shall reimburse us for such part of the deductible amount as we have paid.

E. The Limits of Liability will not be reduced by the amount of any "damages" within the deductible amount.

## SECTION V – SUPPLEMENTARY PAYMENTS

We will pay, in addition to the applicable Limit of Liability:

A. All "claims expenses" in connection with any "claim" or "suit" we defend.

B. All costs charged against any insured in such "claims" or "suits".

C. All interest on the entire amount of any judgment which accrues after entry of the judgment and before we have paid, offered to pay or deposited, whether in court or otherwise, that part of the judgment which does not exceed our Limit of Liability.

D. Prejudgment interest against any insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Liability, we will not pay any pre-judgment interest based on that period time after the offer.

E. Premiums on appeal bonds and premiums on bonds to release attachments but not for bond amounts in excess of the applicable Limit of Liability.

F. All reasonable expenses incurred by the insured at our request to assist us in the investigation of the "claim" or "suit", including actual loss of earnings up to $250 a day for each insured because of time off from work, subject to a limit of $5,000 for each individual insured subject to a maximum limit of $10,000 per "policy period".

G. All reasonable legal expenses incurred by the insured resulting from the defense of a proceeding by a regulatory or disciplinary official or agency to investigate charges of professional misconduct in the rendering of or failure to render "professional legal services" subject to a limit of $5,000 per "policy period".

## SECTION VI – POLICY TERRITORY

This policy applies worldwide, provided that "claim" is made and "suit" is brought within the United States of America (including its territories or possessions), Puerto Rico or Canada.

## SECTION VII – EXCLUSIONS

This insurance does not apply to "claims":

A. Arising out of any dishonest, fraudulent, criminal or malicious act, error, omission or "personal injury" committed by, at the direction of, or with the knowledge of an insured. This exclusion does not apply to an insured who did not personally commit or personally participate in committing any of the knowingly wrongful acts, errors, omissions or "personal injury", provided that:

1. Such insured had neither notice nor knowledge of such knowingly wrongful act, error, omission or "personal injury"; and

2. Such insured, upon receipt of notice or knowledge of such knowingly wrongful act, error, omission or "personal injury", notifies us as soon as possible.

B. Arising out of "bodily injury" or "property damage".

C. Made by one insured under this policy against another insured under this policy.

D. Alleging discrimination.

E. Arising out of any insured's activities and/or capacity as a fiduciary under The Employee Retirement Income Security Act of 1974 as amended, or similar responsibility under state statutory or common law, except if the insured is deemed to be a fiduciary solely by reason of "professional legal services" rendered with respect to any employee benefit plan.

F. Based upon or arising out of any insured's capacity as:

1. A public official or employee of a governmental body, subdivision or agency thereof unless the insured is deemed to be such solely by virtue of rendering "professional legal services" to such governmental body, the remuneration for which services inures to the benefit of the "Named Insured"; or

2. An officer, director, partner, employee, principal, shareholder or member of any organization other than the "Named Insured" or any "predecessor in business".

G. Arising out of any error, omission, negligent act or "personal injury" occurring prior to the inception date of this policy if any insured prior to the inception date knew or could have reasonably foreseen that such error, omission, negligent act or "personal injury" might be expected to be the basis of a "claim" or "suit".

H. Arising out of:

1. The promotion, sale or solicitation for sale of securities, real estate, or other investments by any insured; or

2. Recommendations, representations or opinions concerning specific investment advice by any insured or any person or organization referred to by any insured in connection with portfolio or trust account management, or the performance or nonperformance of securities, real estate, or other investments.

I. Arising out of "professional legal services" performed for or on behalf of any organization other than the "Named Insured" or any "predecessor in business" at any time when those services were performed the organization was:

1. Directly or indirectly controlled, operated or managed by any insured; or

2. Owned by any insured, or by a spouse of any insured, in a percentage which exceeds:

   a. 5% of the issued and outstanding voting stock of the shares of a publicly traded organization; or

   b. 10% of the shares of a closely or privately held organization.

J. Against any insured as a beneficiary or distributee of any trust or estate.

K. Arising out of liability assumed by any insured under any indemnity, hold harmless or similar provisions or agreements, but this exclusion does not apply to liability an insured would have in the absence of such agreements.

L. Arising out of the inability or failure to pay, collect, administer or safeguard funds held or to be held for others.

M. Arising out of the alleged notarized certification or acknowledgment by any insured, in their capacity as a notary public, of a signature on a document which the insured did not witness being placed on the document.

N. Arising solely out of an error, omission, negligent act or "personal injury" of a lawyer with whom you share or shared common office space or common office facilities and who is or was not an insured under this policy.

## SECTION VIII — DEFINITIONS

A. "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including the death of any person, resulting at any time. "Bodily injury" includes mental anguish and emotional distress.

B. "Claim" means a demand received by an insured for money alleging an error, omission or negligent act in the rendering of or failure to render "professional legal services" for others by you or on your behalf.

C. "Claims Expense" means reasonable and necessary fees charged by (an) attorney(s) designated or approved in writing by us and all other fees, costs, and expenses resulting from the investigation, adjustment, defense and appeal of a "claim", "suit" or proceeding arising in connection therewith, if incurred by us or by an insured with our written consent.

D. "Claims-Made Relationship" means that period of time between the Inception Date of the first claims-made policy between you and us, without any gap of coverage, but does not include any period covered by an Extended Reporting Period.

E. "Damages" means compensatory damages which an insured becomes legally obligated to pay as a result of any judgment, award or settlement, provided any settlement is negotiated with the assistance and approval of us. "Damages" does not include punitive or exemplary damages, fines, sanctions or penalties, equitable relief or the return or reimbursement of fees for "professional legal services" whether or not rendered.

F. "Named Insured" means the person or entity as stated in the Declarations.

G. "Personal Injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment; or

2. Malicious prosecution; or

3. The wrongful eviction from, wrongful entry into, or the invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor; or

4. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

5. Oral or written publication of material that violates a person's right of privacy.

H. "Policy Period" means the period from the inception date of this policy to the policy expiration date, as set forth in the Declarations, or the date of cancellation, whichever is earlier.

I. "Predecessor in Business" means a law firm or practice which has undergone dissolution and at least 50% of the owners, officers, partners, principals or shareholders of the prior firm have joined you.

J. "Professional Legal Services" means services performed or advice given by you or on your behalf for others in the conduct of your practice as a lawyer, real estate title insurance agent, notary public, arbitrator or mediator. It includes services performed for others ordinarily rendered by a lawyer as an administrator, conservator, executor, guardian, trustee, receiver, or in any other similar fiduciary capacity and then only for such services. It does not include services performed or advice given while acting in the capacity of an employee, officer, director, partner, shareholder, principal, investor, member, agent or in any other capacity that gives rise to a conflict of interest of any organization other than the "Named Insured" or any "predecessor in business".

K. "Property Damage" means:

1. Physical injury to tangible property, including all resulting loss of use of that property; or

2. Loss of use of tangible property that is not physically injured.

L. "Suit" means a civil proceeding in which "damages" to which this insurance applies are alleged. "Suit" includes:

1. An arbitration proceeding in which such "damages" are claimed and to which an insured must submit or does submit with our consent; or

2. Any other alternative dispute resolution proceeding in which "damages" are claimed and to which an insured submits with our consent.

SECTION IX – CONDITIONS

A. Extended Reporting Periods

CONDITION A, Extended Reporting Periods, will not apply to this policy, except for the automatic 60 Day Basic Extended Reporting Period described in Paragraph 1 below, if the "claims-made relationship" between you and the Company has been less than one year and the policy has been terminated for nonpayment of premium or fraud.

1. In the event of any termination of coverage which is defined as:

   a. Cancellation; or
   b. Nonrenewal; or
   c. Decrease in the Limits of Liability; or
   d. Reduction of coverage; or
   e. Increased deductible; or
   f. New exclusion; or
   g. Any other change in coverage which is less favorable to the insured;

An automatic 60 Day Basic Extended Reporting Period will be furnished to the insured for reporting any "claim" first made against the insured arising out of an error, omission, or negligent act to which this coverage applies and which occurred after any retroactive date, if any, and prior to the end to the "policy period". Any "claims" reported under this 60 Day Basic Extended Reporting Period will

be considered as having been made before the end of the "policy period". The 60 Day Basic Extended Reporting Period coverage is excess over any other valid and collectible insurance available to any insured.

The 60 Day Basic Extended Reporting Period does not increase our Limits of Liability. The Limit of Liability for the 60 Day Basic Reporting Period will be the amount of coverage remaining in the Aggregate Limit of Liability of the terminated policy.

2. You will also have the right to purchase a Supplemental Extended Reporting Period. Upon payment of the additional premium, we will issue an endorsement providing a three (3) year Supplemental Extended Reporting Period, inclusive of the 60 Day Basic Extended Reporting Period specified in Paragraph 1 above. This endorsement will cover "claims" first made during the Supplemental Extended Reporting Period for errors, omissions or negligent acts which occurred prior to the end of the "policy period" and are otherwise covered by the policy. The additional premium for this Supplemental Extended Reporting Period will be 190% of the policy's last annual premium. This Supplemental Extended Reporting Period coverage is excess over any other valid and collectible insurance available to any insured.

3. Not later than thirty (30) days after the termination of coverage, we will mail or deliver to the first "Named Insured" in Item 1 of the Declarations, written notice of the Basic Extended Reporting Period, and the availability of, the premium for, and the importance of purchasing the Supplemental Extended Reporting Period. Proof of mailing or delivery, shall be sufficient proof of notice.

The first "Named Insured" will have the greater of sixty (60) days from the effective date of termination of coverage, or thirty (30) days from the date of mailing or delivery of the notice of the availability to purchase the Supplemental Extended Reporting Period, to submit written acceptance of, and premium for, the Supplemental Extended Reporting Period to us.

4. If this policy or continuous claims-made policy's, issued on behalf of the Company, have been in effect for less than three (3) years, the amount of coverage afforded under the Supplemental Extended Reporting Period shall be the greater of the amount of coverage remaining in the policy's Annual Aggregate Limit of Liability or fifty percent (50%) of the policy's Annual Aggregate Limit of Liability.

If this policy or continuous claims-made policies, issued on behalf of the Company, have been in effect for three (3) years or more, the amount of coverage will be equal to 100% of the policy's Annual Aggregate Limit of Liability.

5. If you become totally and permanently disabled or die during the "policy period", the period for reporting "claims" is extended until your disability ends or the executor or administrator is discharged.

No additional premium will be charged for this extension nor will any premium be refunded.

We also require one of the following, within 60 days after the end of this policy, for this coverage to apply:

a. Written proof of your permanent and total disability, including the date it happened, certified by your attending physician. You agree to submit to medical examination(s) by any physician(s) we designate if requested; or

b. Written proof of the date of your death.

6. During a "claims-made relationship" and any Extended Reporting Period, a person employed or otherwise affiliated with you and covered by your claims-made policy during such affiliation will continue to be covered under such policy and any Extended Reporting Period after the affiliation has ceased, for such

LA005 Ed. 4-05
© 2005 The St. Paul Travelers Companies, Inc. All Right Reserved    Page 6 of 13

person's errors, omissions or negligent acts performed on your behalf during the affiliation with you.

If this policy was issued to a corporation or partnership, we will provide an Individual Extended Reporting Period coverage upon termination of coverage to any person covered under the policy if:

a. Such entity has been placed in liquidation or bankruptcy or permanently ceases operations; and

b. The entity or its designated entity does not purchase Extended Reporting coverage; and

c. Such person requests the Individual Extended Reporting Period within 120 days of termination of coverage.

We will not be obligated to provide any notice to any person of the availability of the Extended Reporting Periods coverage other than to the first "Named Insured".

B. Reporting of Circumstances Which May Give Rise to a "Claim"

If, during the "policy period", any insured first becomes aware of a circumstance which may give rise to a "claim" (i.e., any act, error, omission or "personal injury" which might reasonably be expected to be the basis of a "claim" against any insured under this policy), the insured must give written notice in accordance with SECTION IX – CONDITIONS C, Insured's Duties in the Event of a "Claim", "Suit" or Circumstances Which May Give Rise to a "Claim". Any "claims" subsequently made against any insured arising out of that circumstance shall be considered to have been made and reported during the "policy period".

C. Insured's Duties in the Event of a "Claim", "Suit" or Circumstances Which May Give Rise to a "Claim"

1. You and another involved insured must see to it that we are notified in writing as soon as practicable and within the "policy period", any subsequent renewal of the policy by us or any applicable Extended Reporting Period of any circumstance which may give rise to a "claim". To the extent possible, written notice should include:

   a. The specific act, error, omission or "personal injury" including the date(s) thereof; and

   b. The "damages" that may reasonably result; and

   c. The date and circumstances by which any insured became aware of the act, error, omission or "personal injury".

2. If a "claim" is received by any insured you must:

   a. Immediately record the specifics of the "claim" and the date received; and

   b. Notify us as soon as practicable.

   You and any other involved insured must see to it that we receive written notice of the "claim" as soon as practicable and within the "policy period", any subsequent renewal of the policy or applicable Extended Reporting Period.

3. You and any other involved insured must:

   a. Immediately send us copies of any demands, notices, summons or legal papers received in connection with the "claim" or "suit"; and

   b. Authorize us to obtain records and other information; and

   c. Cooperate with us in the investigation, settlement or defense of the "claim" or "suit"; and

   d. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to any insured because of "damages" to which this insurance may also apply.

4. No insured will, except at their own cost, voluntarily make a payment,

LA005 Ed. 4-05
© 2005 The St. Paul Travelers Companies, Inc. All Right Reserved          Page 7 of 13

assume any obligation, or incur any expense without our written consent.

5. Notice given by or on behalf of an insured, or written notice by or on behalf of the injured person or any other claimant, to any agent of ours in New York State, with particulars sufficient to identify the insured, shall be considered to be notice to us.

D. Transfer of Right of Recovery Against Others

If an insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. Such insured must do nothing after a "claim" is made or "suit" is brought to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

Failure to comply with this CONDITION D will not in itself impair coverage, provided that the insured against whom "claim" is made or "suit" is brought did not personally impair rights of recovery or have knowledge of such impairment. Furthermore, upon receipt of such knowledge, such insured must immediately notify us that those rights have been impaired.

E. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first "Named Insured" shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policies' terms can be amended or waived only by an endorsement issued by us as part of this policy.

F. Legal Action Against Us

No person or organization has a right under this policy:

1. To join us as a party or otherwise bring us into a "claim" or "suit" asking for "damages" from an insured; or

2. To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for "damages" that are not payable under the terms of this policy or that are in excess of the applicable Limit of Liability. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

G. Bankruptcy

Bankruptcy or insolvency of any insured or of an insured's estate will not relieve us of our obligations under this policy.

H. Cancellation

1. The first "Named Insured" may cancel this policy by:

   a. Surrendering the policy to us or any of our authorized agents; or

   b. Mailing to us written notice stating when thereafter the cancellation shall be effective.

2. Cancellation of Policies in Effect 60 Days or Less

This policy may be cancelled by us by mailing or delivering to the first "Named Insured" written notice stating the reason for cancellation at the mailing address shown in the policy, and the authorized agent or broker at least:

   a. 30 days before the effective date of cancellation if the policy is cancelled for any reason not included in Paragraph b below.

   b. 15 days before the effective date of cancellation if the policy is cancelled for any of the following reasons:

      (1) Nonpayment of premium (if we cancel for this reason, the notice will include the amount due); or

      (2) Conviction of a crime arising out of acts increasing the hazard insured against; or

© 2005 The St. Paul Travelers Companies, Inc. All Right Reserved