our recommendation. We shall have the right to withdraw from further defense of the "claim" or proceeding by tendering control of said defense over to you.

We will not be obligated to pay "damages" or "claims expenses" or to defend any "claim" or "suit" after the applicable Limit of Liability has been exhausted by payment made by us towards judgments and/or settlements.

## SECTION II – INSURED

Each of the following is an insured:

A. The "Named Insured" shown in the Declarations; and

B. Any person who was, is now or hereafter becomes a partner, officer, director, employee, principal, shareholder or member of the "Named Insured", whether named or not, but only while acting in the scope of their duties as such; and

C. Any lawyer retained as Of Counsel by you, but only with respect to "professional legal services" performed for you or on your behalf or on behalf of a "predecessor firm"; and

D. The estate, heirs, executors, administrators, and legal representatives of any insured in the event of such insured's death, incapacity, insolvency or bankruptcy, but only to the extent that such insured would otherwise be provided coverage under this policy; and

E. Any "predecessor in business" or person who was a partner, officer, director, employee, principal, shareholder or member of any "predecessor in business" who provided "professional legal services" on behalf of any "predecessor in business", provided a request for such coverage is made to us and accepted in writing prior to the inception of such coverage; and

F. Any organization you newly acquire or form is an insured under this policy only when we provide you our written acceptance. This provision applies to any partner, officer, director, employee, principal, shareholder or member of such newly acquired or formed organization.

## SECTION III – LIMITS OF LIABILITY

Regardless of the number of insureds under this policy, the number of persons or organizations seeking "damages" or the number of "claims" made, our liability is limited as follows:

A. The amount stated in the Declarations as applicable to each "claim" is the most we will pay for all "damages" arising out of the same or related errors, omissions, negligent acts or "personal injury". For the purposes of determining our Limit of Liability, all "claims" arising out of the same or related errors, omissions, negligent acts or "personal injury" will be deemed to have been made when the first of such "claims" is made whether such demands are made against one or more insureds or whether such demands are made by one or more persons and will be treated as a single "claim".

B. The amount shown in the Declarations as Policy Aggregate is the most we will pay for all "damages" for all "claims" to which this insurance applies.

## SECTION IV – DEDUCTIBLE

A. Our obligation to pay "damages" under this policy applies only to the amount of "damages" which are in excess of the Deductible amount stated in the Declarations.

B. The deductible amount applies to all "damages" incurred as the result of each "claim". The deductible amount does not apply to "claims expenses" incurred as the result of each "claim".

C. The terms of the policy, including those with respect to our right and duty to defend "suits" and your duties in the event of a "claim", "suit" or circumstances which may give rise to a "claim", apply irrespective of the application of the deductible.

D. We may pay any part or all of the deductible amount. Upon notification of the action we have taken, you shall reimburse us for such part of the deductible amount as we have paid.

E. The Limits of Liability will not be reduced by the amount of any "damages" within the deductible amount.

## SECTION V – SUPPLEMENTARY PAYMENTS

We will pay, in addition to the applicable Limit of Liability:

A. All "claims expenses" in connection with any "claim" or "suit" we defend.

B. All costs charged against any insured in such "claims" or "suits".

C. All interest on the entire amount of any judgment which accrues after entry of the judgment and before we have paid, offered to pay or deposited, whether in court or otherwise, that part of the judgment which does not exceed our Limit of Liability.

D. Prejudgment interest against any insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Liability, we will not pay any pre-judgment interest based on that period time after the offer.

E. Premiums on appeal bonds and premiums on bonds to release attachments but not for bond amounts in excess of the applicable Limit of Liability.

F. All reasonable expenses incurred by the insured at our request to assist us in the investigation of the "claim" or "suit", including actual loss of earnings up to $250 a day for each insured because of time off from work, subject to a limit of $5,000 for each individual insured subject to a maximum limit of $10,000 per "policy period".

G. All reasonable legal expenses incurred by the insured resulting from the defense of a proceeding by a regulatory or disciplinary official or agency to investigate charges of professional misconduct in the rendering of or failure to render "professional legal services" subject to a limit of $5,000 per "policy period".

## SECTION VI – POLICY TERRITORY

This policy applies worldwide, provided that "claim" is made and "suit" is brought within the United States of America (including its territories or possessions), Puerto Rico or Canada.

## SECTION VII – EXCLUSIONS

This insurance does not apply to "claims":

A. Arising out of any dishonest, fraudulent, criminal or malicious act, error, omission or "personal injury" committed by, at the direction of, or with the knowledge of an insured. This exclusion does not apply to an insured who did not personally commit or personally participate in committing any of the knowingly wrongful acts, errors, omissions or "personal injury", provided that:

   1. Such insured had neither notice nor knowledge of such knowingly wrongful act, error, omission or "personal injury"; and

   2. Such insured, upon receipt of notice or knowledge of such knowingly wrongful act, error, omission or "personal injury", notifies us as soon as possible.

B. Arising out of "bodily injury" or "property damage".

C. Made by one insured under this policy against another insured under this policy.

D. Alleging discrimination.

E. Arising out of any insured's activities and/or capacity as a fiduciary under The Employee Retirement Income Security Act of 1974 as amended, or similar responsibility under state statutory or common law, except if the insured is deemed to be a fiduciary solely by reason of "professional legal services" rendered with respect to any employee benefit plan.

F. Based upon or arising out of any insured's capacity as:

   1. A public official or employee of a governmental body, subdivision or agency thereof unless the insured is deemed to be such solely by virtue of rendering "professional legal services" to such governmental body, the remuneration for which services inures to the benefit of the "Named Insured"; or

   2. An officer, director, partner, employee, principal, shareholder or member of any organization other than the "Named Insured" or any "predecessor in business".

G. Arising out of any error, omission, negligent act or "personal injury" occurring prior to the inception date of this policy if any insured prior to the inception date knew or could have reasonably foreseen that such error, omission, negligent act or "personal injury" might be expected to be the basis of a "claim" or "suit".

H. Arising out of:

1. The promotion, sale or solicitation for sale of securities, real estate, or other investments by any insured; or

2. Recommendations, representations or opinions concerning specific investment advice by any insured or any person or organization referred to by any insured in connection with portfolio or trust account management, or the performance or nonperformance of securities, real estate, or other investments.

I. Arising out of "professional legal services" performed for or on behalf of any organization other than the "Named Insured" or any "predecessor in business" at any time when those services were performed the organization was:

1. Directly or indirectly controlled, operated or managed by any insured; or

2. Owned by any insured, or by a spouse of any insured, in a percentage which exceeds:

a. 5% of the issued and outstanding voting stock of the shares of a publicly traded organization; or

b. 10% of the shares of a closely or privately held organization.

J. Against any insured as a beneficiary or distributee of any trust or estate.

K. Arising out of liability assumed by any insured under any indemnity, hold harmless or similar provisions or agreements, but this exclusion does not apply to liability an insured would have in the absence of such agreements.

L. Arising out of the inability or failure to pay, collect, administer or safeguard funds held or to be held for others.

M. Arising out of the alleged notarized certification or acknowledgment by any insured, in their capacity as a notary public, of a signature on a document which the insured did not witness being placed on the document.

N. Arising solely out of an error, omission, negligent act or "personal injury" of a lawyer with whom you share or shared common office space or common office facilities and who is or was not an insured under this policy.

## SECTION VIII – DEFINITIONS

A. "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including the death of any person, resulting at any time. "Bodily injury" includes mental anguish and emotional distress.

B. "Claim" means a demand received by an insured for money alleging an error, omission or negligent act in the rendering of or failure to render "professional legal services" for others by you or on your behalf.

C. "Claims Expense" means reasonable and necessary fees charged by (an) attorney(s) designated or approved in writing by us and all other fees, costs, and expenses resulting from the investigation, adjustment, defense and appeal of a "claim", "suit" or proceeding arising in connection therewith, if incurred by us or by an insured with our written consent.

D. "Claims-Made Relationship" means that period of time between the Inception Date of the first claims-made policy between you and us, without any gap of coverage, but does not include any period covered by an Extended Reporting Period.

E. "Damages" means compensatory damages which an insured becomes legally obligated to pay as a result of any judgment, award or settlement, provided any settlement is negotiated with the assistance and approval of us. "Damages" does not include punitive or exemplary damages, fines, sanctions or penalties, equitable relief or the return or reimbursement of fees for "professional legal services" whether or not rendered.

F. "Named Insured" means the person or entity as stated in the Declarations.

G. "Personal Injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment; or

2. Malicious prosecution; or

3. The wrongful eviction from, wrongful entry into, or the invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor; or

4. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

5. Oral or written publication of material that violates a person's right of privacy.

H. "Policy Period" means the period from the inception date of this policy to the policy expiration date, as set forth in the Declarations, or the date of cancellation, whichever is earlier.

I. "Predecessor in Business" means a law firm or practice which has undergone dissolution and at least 50% of the owners, officers, partners, principals or shareholders of the prior firm have joined you.

J. "Professional Legal Services" means services performed or advice given by you or on your behalf for others in the conduct of your practice as a lawyer, real estate title insurance agent, notary public, arbitrator or mediator. It includes services performed for others ordinarily rendered by a lawyer as an administrator, conservator, executor, guardian, trustee, receiver, or in any other similar fiduciary capacity and then only for such services. It does not include services performed or advice given while acting in the capacity of an employee, officer, director, partner, shareholder, principal, investor, member, agent or in any other capacity that gives rise to a conflict of interest of any organization other than the "Named Insured" or any "predecessor in business".

K. "Property Damage" means:

1. Physical injury to tangible property, including all resulting loss of use of that property; or

2. Loss of use of tangible property that is not physically injured.

L. "Suit" means a civil proceeding in which "damages" to which this insurance applies are alleged. "Suit" includes:

1. An arbitration proceeding in which such "damages" are claimed and to which an insured must submit or does submit with our consent; or

2. Any other alternative dispute resolution proceeding in which "damages" are claimed and to which an insured submits with our consent.

SECTION IX – CONDITIONS

A. Extended Reporting Periods

CONDITION A, Extended Reporting Periods, will not apply to this policy, except for the automatic 60 Day Basic Extended Reporting Period described in Paragraph 1 below, if the "claims-made relationship" between you and the Company has been less than one year and the policy has been terminated for nonpayment of premium or fraud.

1. In the event of any termination of coverage which is defined as:

   a. Cancellation; or

   b. Nonrenewal; or

   c. Decrease in the Limits of Liability; or

   d. Reduction of coverage; or

   e. Increased deductible; or

   f. New exclusion; or

   g. Any other change in coverage which is less favorable to the insured;

An automatic 60 Day Basic Extended Reporting Period will be furnished to the insured for reporting any "claim" first made against the insured arising out of an error, omission, or negligent act to which this coverage applies and which occurred after any retroactive date, if any, and prior to the end to the "policy period". Any "claims" reported under this 60 Day Basic Extended Reporting Period will

be considered as having been made before the end of the "policy period". The 60 Day Basic Extended Reporting Period coverage is excess over any other valid and collectible insurance available to any insured.

The 60 Day Basic Extended Reporting Period does not increase our Limits of Liability. The Limit of Liability for the 60 Day Basic Reporting Period will be the amount of coverage remaining in the Aggregate Limit of Liability of the terminated policy.

2. You will also have the right to purchase a Supplemental Extended Reporting Period. Upon payment of the additional premium, we will issue an endorsement providing a three (3) year Supplemental Extended Reporting Period, inclusive of the 60 Day Basic Extended Reporting Period specified in Paragraph 1 above. This endorsement will cover "claims" first made during the Supplemental Extended Reporting Period for errors, omissions or negligent acts which occurred prior to the end of the "policy period" and are otherwise covered by the policy. The additional premium for this Supplemental Extended Reporting Period will be 190% of the policy's last annual premium. This Supplemental Extended Reporting Period coverage is excess over any other valid and collectible insurance available to any insured.

3. Not later than thirty (30) days after the termination of coverage, we will mail or deliver to the first "Named Insured" in Item 1 of the Declarations, written notice of the Basic Extended Reporting Period, and the availability of, the premium for, and the importance of purchasing the Supplemental Extended Reporting Period. Proof of mailing or delivery, shall be sufficient proof of notice.

The first "Named Insured" will have the greater of sixty (60) days from the effective date of termination of coverage, or thirty (30) days from the date of mailing or delivery of the notice of the availability to purchase the Supplemental Extended Reporting Period, to submit written acceptance of, and premium for, the Supplemental Extended Reporting Period to us.

4. If this policy or continuous claims-made policy's, issued on behalf of the Company, have been in effect for less than three (3) years, the amount of coverage afforded under the Supplemental Extended Reporting Period shall be the greater of the amount of coverage remaining in the policy's Annual Aggregate Limit of Liability or fifty percent (50%) of the policy's Annual Aggregate Limit of Liability.

If this policy or continuous claims-made policies, issued on behalf of the Company, have been in effect for three (3) years or more, the amount of coverage will be equal to 100% of the policy's Annual Aggregate Limit of Liability.

5. If you become totally and permanently disabled or die during the "policy period", the period for reporting "claims" is extended until your disability ends or the executor or administrator is discharged.

No additional premium will be charged for this extension nor will any premium be refunded.

We also require one of the following, within 60 days after the end of this policy, for this coverage to apply:

a. Written proof of your permanent and total disability, including the date it happened, certified by your attending physician. You agree to submit to medical examination(s) by any physician(s) we designate if requested; or

b. Written proof of the date of your death.

6. During a "claims-made relationship" and any Extended Reporting Period, a person employed or otherwise affiliated with you and covered by your claims-made policy during such affiliation will continue to be covered under such policy and any Extended Reporting Period after the affiliation has ceased, for such

person's errors, omissions or negligent acts performed on your behalf during the affiliation with you.

If this policy was issued to a corporation or partnership, we will provide an Individual Extended Reporting Period coverage upon termination of coverage to any person covered under the policy if:

a. Such entity has been placed in liquidation or bankruptcy or permanently ceases operations; and

b. The entity or its designated entity does not purchase Extended Reporting coverage; and

c. Such person requests the Individual Extended Reporting Period within 120 days of termination of coverage.

We will not be obligated to provide any notice to any person of the availability of the Extended Reporting Periods coverage other than to the first "Named Insured".

B. Reporting of Circumstances Which May Give Rise to a "Claim"

If, during the "policy period", any insured first becomes aware of a circumstance which may give rise to a "claim" (i.e., any act, error, omission or "personal injury" which might reasonably be expected to be the basis of a "claim" against any insured under this policy), the insured must give written notice in accordance with **SECTION IX –CONDITIONS C**, Insured's Duties in the Event of a "Claim", "Suit" or Circumstances Which May Give Rise to a "Claim". Any "claims" subsequently made against any insured arising out of that circumstance shall be considered to have been made and reported during the "policy period".

C. Insured's Duties in the Event of a "Claim", "Suit" or Circumstances Which May Give Rise to a "Claim"

1. You and another involved insured must see to it that we are notified in writing as soon as practicable and within the "policy period", any subsequent renewal of the policy by us or any applicable Extended Reporting Period of any circumstance which may give rise to a "claim". To the extent possible, written notice should include:

   a. The specific act, error, omission or "personal injury" including the date(s) thereof; and

   b. The "damages" that may reasonably result; and

   c. The date and circumstances by which any insured became aware of the act, error, omission or "personal injury".

2. If a "claim" is received by any insured you must:

   a. Immediately record the specifics of the "claim" and the date received; and

   b. Notify us as soon as practicable.

   You and any other involved insured must see to it that we receive written notice of the "claim" as soon as practicable and within the "policy period", any subsequent renewal of the policy or applicable Extended Reporting Period.

3. You and any other involved insured must:

   a. Immediately send us copies of any demands, notices, summons' or legal papers received in connection with the "claim" or "suit"; and

   b. Authorize us to obtain records and other information; and

   c. Cooperate with us in the investigation, settlement or defense of the "claim" or "suit"; and

   d. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to any insured because of "damages" to which this insurance may also apply.

4. No insured will, except at their own cost, voluntarily make a payment,

LA005 Ed. 4-05
© 2005 The Paul Travelers Companies, Inc.    All Right Reserved                Page 7 of 13

assume any obligation, or incur any expense without our written consent.

5. Notice given by or on behalf of an insured, or written notice by or on behalf of the injured person or any other claimant, to any agent of ours in New York State, with particulars sufficient to identify the insured, shall be considered to be notice to us.

D. Transfer of Right of Recovery Against Others

If an insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. Such insured must do nothing after a "claim" is made or "suit" is brought to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

Failure to comply with this **CONDITION** D will not in itself impair coverage, provided that the insured against whom "claim" is made or "suit" is brought did not personally impair rights of recovery or have knowledge of such impairment. Furthermore, upon receipt of such knowledge, such insured must immediately notify us that those rights have been impaired.

E. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first "Named Insured" shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policies' terms can be amended or waived only by an endorsement issued by us as part of this policy.

F. Legal Action Against Us

No person or organization has a right under this policy:

1. To join us as a party or otherwise bring us into a "claim" or "suit" asking for "damages" from an insured; or

2. To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for "damages" that are not payable under the terms of this policy or that are in excess of the applicable Limit of Liability. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

G. Bankruptcy

Bankruptcy or insolvency of any insured or of an insured's estate will not relieve us of our obligations under this policy.

H. Cancellation

1. The first "Named Insured" may cancel this policy by:

   a. Surrendering the policy to us or any of our authorized agents; or

   b. Mailing to us written notice stating when thereafter the cancellation shall be effective.

2. Cancellation of Policies in Effect 60 Days or Less

   This policy may be cancelled by us by mailing or delivering to the first "Named Insured" written notice stating the reason for cancellation at the mailing address shown in the policy, and the authorized agent or broker at least:

   a. 30 days before the effective date of cancellation if the policy is cancelled for any reason not included in Paragraph b below.

   b. 15 days before the effective date of cancellation if the policy is cancelled for any of the following reasons:

      (1) Nonpayment of premium (if we cancel for this reason, the notice will include the amount due); or

      (2) Conviction of a crime arising out of acts increasing the hazard insured against; or

(3) Discovery of fraud or material misrepresentation in the obtaining of this policy or in the presentation of a "claim" thereunder; or

(4) After issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current "policy period"; or

(5) Material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed; or

(6) Required pursuant to a determination by the Superintendent that the continuation of our present premium volume would jeopardize our solvency or be hazardous to the interest of our policyholders, our creditors or the public; or

(7) A determination by the Superintendent that the continuation of the policy would violate, or would place us in violation of, any provision of the Insurance Code; or

(8) Revocation or suspension of the insured's license to practice his/her profession.

3. Cancellation of Policies in Effect for More Than 60 Days

If this policy has been in effect for more than 60 days, or if this policy is a renewal or continuation of a policy issued by us, this policy may be cancelled by us only for any of the reasons listed in 2, b, above provided we mail written notice of cancellation stating the reason for cancellation to the first "Named Insured" at the address shown in the policy and to the authorized agent or broker at least 15 days before the effective date of cancellation.

4. Notice of cancellation will state the effective date of cancellation. If the policy is cancelled, that date will become the end of the "policy period".

5. If the first "Named Insured" cancels, earned premium will be computed in accordance with the customary short rate table and procedure. If we cancel, earned premium shall be computed pro rata.

However, when the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata. Under such financed policies, the company will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective. Payment or tender of unearned premium is not a condition of cancellation.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

I. Nonrenewal or Conditional Renewal

1. Nonrenewal

If we decide not to renew this policy we will mail or deliver written notice of nonrenewal to the first "Named Insured" as provided in Paragraph I, 3, below, along with the specific reason(s) for nonrenewal.

2. Conditional Renewal

If we condition renewal of this policy upon:

a. Change of limits; or

b. Change in type of coverage; or

c. Reduction of coverage; or

d. Increased Deductible; or

    e. Addition of an exclusion; or

    f. Increased premiums in excess of 10%, exclusive of any premium increase due to and commensurate with insured value added or increased exposure units; or as a result of experience rating or audit;

We will send, mail or deliver written notice of conditional renewal as provided in Paragraph 3 below stating renewal premium and specific reason(s) for the conditional renewal.

3. Notices of Nonrenewal and Conditional Renewal

    a. If we decide not to renew this policy or to conditionally renew this policy as provided in Paragraphs I, 1, and I, 2, above, we shall mail or deliver written notice to the first "Named Insured" at least 60 but not more than 120 days before:

        (1) The Expiration Date; or

        (2) The anniversary date if this is a continuous policy.

    b. Notice will be mailed or delivered to the first "Named Insured" at the address shown in the policy and to the authorized agent or broker. If notice is mailed or delivered, proof of mailing or delivery, will be sufficient proof of notice.

    c. We will not send the first "Named Insured" notice of nonrenewal or conditional renewal if the "Named Insured", the authorized agent or broker or another insurer of the "Named Insured" mails or delivers notice that the policy has been replaced or is no longer desired.

4. Late Notice of Conditional Renewal or Nonrenewal

    a. If prior to the expiration of this policy, we send an incomplete or late conditional renewal notice or a late or incomplete nonrenewal notice as provided for in Paragraph I, 3, above, coverage will remain in effect at the same terms and conditions of this policy and at the lower of the current rates or the prior period's rates until sixty (60) days after such notice is mailed or delivered, unless you elect to cancel sooner.

    b. If we do send the first "Named Insured" notice of nonrenewal or conditional renewal until on, or after the expiration of the current coverage, coverage will remain in effect on the same terms and conditions of the expiring policy for another "policy period" and at the lower of the current rates or the prior period's rates, unless the insured notifies us during the additional "policy period" coverage has been replaced or elects to cancel, in which event cancellation shall be on a pro rata basis.

    c. The Aggregate Limit of this policy as shown in the Declarations will be increased in proportion to any policy extension provided in accordance with Paragraphs 4, a, and 4, b, above.

J. Conformity to Statute

The terms of this policy which are in conflict with the statutes of the state wherein this policy is delivered are hereby amended to conform to such statute.

K. Transfer of Your Rights and Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual "Named Insured".

If you die, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have rights and duties, but only with respect to that property.

L. Other Insurance

LA005 Ed. 4-05
© 2005 The St. Paul Travelers Companies, Inc. All Right Reserved     Page 10 of 13

This insurance, including any applicable Extended Reporting Period coverage, is excess over any other valid and collectible insurance available to any insured.

M. Examination of Your Books and Records

You must keep accurate records of the information we will need to compute your premium. You agree to allow us to examine and audit your financial books and records that relate to this insurance. We may do this within one hundred and eighty (180) days after expiration of this policy.

We may as soon as practicable following such audit, refund or credit your account for any return premium due you, or bill and make a good faith effort to collect any additional premium due us, as a result of such audit.

If you fail to cooperate with us in our attempt to conduct an audit, including your failure to return any questionnaires or self-audit worksheets, we shall have the right to not renew your policy upon expiration of the current policy due to our inability to establish your proper premium.

N. Transfer of Duties When a Limit of Insurance is Used Up

1. If we conclude that based on the "claims", or "suits" which have been reported to us and to which this insurance may apply, that the Annual Aggregate Limit of Liability is likely to be used up in the payment of judgments or settlements, we will notify the first "Named Insured" in Item 1 of the Declarations, in writing, to that effect.

2. When the Annual Aggregate Limit of Liability has actually been used up in the payment of judgments or settlements:

   a. We will notify the first "Named Insured", in writing, as soon as practicable, that:

      (1) Such limit has actually been used up; and

      (2) Our duty to defend "suits" seeking "damages" subject to the Annual Aggregate Limit has also ended.

   b. We will initiate, and cooperate in, the transfer of control, to any appropriate insured, of all "claims" and "suits" seeking "damages" which are subject to the Annual Aggregate Limit and which are reported to us before the limit is used up. That insured must cooperate in the transfer of control of said "claims" and "suits".

   We agree to take such steps, as we deem appropriate, to avoid a default in, or continue the defense of, such "suits" until such transfer is completed, provided the appropriate insured is cooperating in completing such transfer.

   c. The first "Named Insured" in Item 1 of the Declarations, and any other insured involved in a "suit" seeking "damages" subject to the Annual Aggregate Limit, must arrange for the defense of such "suit" within such time period as agreed to between the appropriate insured and us. Absent any such agreement, arrangement for the defense of such "suit" must be made as soon as practicable.

3. The first "Named Insured" in Item 1 of the Declarations will reimburse us for expenses we incur in taking those steps we deem appropriate in accordance with Paragraph 2, b, above.

4. The exhaustion of the Annual Aggregate Limit of Liability by the payments of judgments or settlements, and the resulting end of our duty to defend will not be affected by our failure to comply with any of the provisions of this CONDITION N.

O. Premiums and Premium Audit

1. All premiums for this policy are computed in accordance with our rules and rates.

2. If the Premium in Item 6 of the Declarations, is shown as adjustable

or subject to audit, it is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. An audit to determine the final premium due or to be refunded will be completed within 180 days after the Expiration Date of the policy and may not be waived. Audit premiums are due and payable on notice to the first "Named Insured" in Item 1 of the Declarations. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first "Named Insured".

3. The first "Named Insured" in Item 1 of the Declarations must keep records of the information we need for premium computation, and send us copies at such times as we may request.

   The first "Named Insured" shown in the Declarations:

   a. Is responsible for the payment of all premiums and deductibles; and

   b. Will be the payee for any return premiums we pay.

P. Representations

By accepting this policy, you agree:

1. The statements in the application and any supplements which are attached to and forms a part of the policy are accurate and complete; and

2. We have issued this policy in reliance upon your representations.

Q. Headings

The descriptions in the headings and subheadings of this policy are solely for convenience and form no part of the terms, conditions exclusions and limitation of this policy.

R. Loss Information

We will provide the first Named Insured with the following loss information for the period of time that we have continuously provided coverage under this policy:

1. The date and description of the error, omission, negligent act, or "personal injury" on closed claims, including the amount of payment, if any;

2. The date and description of the error, omission, negligent act, or "personal injury" on open claims, including the amount of payment, if any;

3. The date and description of each error, omission, negligent act, or "personal injury" you reported to us.

We will provide this information only if we receive a request for it from the first Named Insured or the first Named Insured's agent or broker. Once we receive this request, we will mail or deliver the information to the first Named Insured or the first Named Insured's agent or broker within 20 days.

We collect this information for our own business purposes. We do so as carefully and accurately as we can. In giving this information to the first Named Insured or the first Named Insured's agent or broker, we don't make any promises or warranties to anyone that this information has no errors. Any cancellation or nonrenewal will take effect even if we accidentally provide incorrect information.

S. Optional Extension for a Reduction in Coverage

If there is a reduction in coverage, we will make available to you an extension that applies the coverage previous to that reduction to covered claims resulting from errors, omissions, negligent acts, or "personal injury" committed before the effective date that coverage was reduced.

We will notify you in writing within 30 days after the effective date of the reduction in coverage of the Basic Extended Reporting Period, the need for purchasing this extension, and the current cost of this extension.

The requirements for you to obtain such an extension are the same as those for the Supplemental Extended Reporting Period.

LA005 Ed. 4-05
© 2005 The St. Paul Travelers Companies, Inc. All Right Reserved                Page 12 of 13

We will continue to offer such an extension, while coverage is continuously provided by us, until you choose not to purchase the extension when it is offered or this Coverage Form is canceled or not renewed.

If this optional extension is continuously provided by us from the effective date of the reduction in coverage to the date that this Coverage Form ends because one of us chooses to cancel or not renew it, the optional extension will be part of the Basic Extended Reporting Period or Supplemental Extended Reporting Period available to you at that time.

T. Retroactive Date

The retroactive date may not be changed during the time that this claims-made Coverage Form has been continuously in effect with us or any reporting period.

This policy consists of the Lawyers Professional Liability Declarations, Coverage Form, Endorsements listed in that Declarations (or subsequently attached), and the Application including any applicable supplements.

In return for payment of the premium, we agree with the "Named Insured" to provide the insurance afforded by this policy. That insurance will be provided by the Company indicated as the INSURING COMPANY in the Declarations.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR LIABILITY EXCLUSION

A. This insurance does not apply to "damages" or "claims expenses" for "claims" or "suits" arising out of the failure to discover or disclose the presence or existence of a "nuclear facility", "nuclear material", "spent fuel" or "waste".

B. As used in this endorsement:

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (1) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (2) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

1. Any "nuclear reactor"; or

2. Any equipment or device designed or used for the (a) separating the isotopes of uranium or plutonium, (b) processing or utilizing "spent fuel," or (c) handling, processing or packaging "waste"; or

3. Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of 235; or

4. Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste", and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

LA008 Ed. 6-04  Printed in U.S.A.
© 2004 The St. Paul Travelers Companies, Inc. All Right Reserved        Page 1 of 1

# NEW YORK APPLICATION AND DECLARATION PAGE ADDENDUM
## CLAIMS-MADE
## DISCLOSURE FORM

### IMPORTANT NOTICE TO APPLICANT OR POLICYHOLDER

THIS DISCLOSURE FORM IS NOT THE POLICY. THIS FORM DESCRIBES SOME OF THE MAJOR FEATURES OF OUR **CLAIMS-MADE** LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM. READ THE COVERAGE FORM CAREFULLY TO DETERMINE DUTIES, RIGHTS, AND WHAT IS AND IS NOT COVERED. THE PROVISIONS OF THE COVERAGE FORM DETERMINE THE SCOPE OF INSURANCE PROTECTION.

WORDS AND PHRASES IN QUOTATION MARKS HAVE SPECIAL MEANINGS AND ARE DEFINED IN THE COVERAGE FORM.

A. The policy provides a specific type of liability insurance protecting the policyholder under certain circumstances. Please review the coverage form carefully with your agent or broker to see that it meets your needs and to thoroughly understand its exclusions, exceptions and limitations.

B. The Lawyers Professional Liability Coverage Form is a Claims-Made form. No coverage is provided for any "claim" which was made prior to the inception date of the policy or for any circumstances occurring before the inception date of the policy which any insured knew about or could reasonably foresee would result in a "claim". If the policy includes a Retroactive Date in the Declarations or a Prior Acts Limitation endorsement, no coverage is provided for any errors, omissions, or negligent acts which occurred prior to the Retroactive Date. The policy applies only to any "claim" which is the result of an error, omission or negligent act in the rendering of or failure to render "professional legal services" for others by you or on your behalf during the "policy period". The "claim" must be first made against an insured during the "policy period" or any applicable Extended Reporting Period. All "claims" must be reported to us as soon as practicable and within the "policy period", any subsequent renewal or applicable Extended Reporting Period. All coverage provided by the policy will cease upon termination of the policy unless and to the extent an Extended Reporting Period applies.

C. If the policy is nonrenewed or terminated or if the Basic or Supplemental Extended Reporting Period has expired, you may have a gap in coverage. Your new insurance carrier may or may not provide coverage on the same basis as this policy or may change the Retroactive Date. It is important for you to review **SECTION IX – CONDITIONS** A, Extended Reporting Periods, in the Coverage Form for the availability of and requirements for the following options:

1. Our Coverage Form automatically provides a 60 days Basic Extended Reporting Period at no additional cost for reporting "claims" resulting from errors, omissions or negligent acts in the rendering or failure to render "professional legal services" by the insured or on the insured's behalf during the "policy period".

2. The first "Named Insured" may purchase for an additional premium of 190% of the premium stated in Item 6 of the Declarations Page a Supplemental Extended Reporting Period of thirty-six (36) months for reporting "claims" from errors, omissions or negligent acts in the rendering or failing to render "professional legal services" during the "policy period". This Supplemental Extended Reporting Period is inclusive of the Basic Extended Reporting Period.

D. During the first several years of a claims-made relationship, claims-made rates are comparatively lower than occurrence rates, and you can expect substantial annual premium increases, independent of overall rate-level increases, until the claims-made relationship reaches maturity.

A048 Ed. 3-05
2005 The St. Paul Travelers Companies, Inc. All Right Reserved



# IMPORTANT NOTICE REGARDING INDEPENDENT AGENT AND BROKER COMPENSATION

For information about how St. Paul Travelers compensates independent agents and brokers, please visit www.stpaultravelers.com, or you may request a written copy from Marketing at One Tower Square, 2GSA, Hartford, CT 06183; Fax (860) 954-5987.

ND044 Rev. 8-05
© 2005 The St. Paul Travelers Companies, Inc. All Rights Reserved

Page 1 of 1