# EXHIBIT D

Rec'd at Mediation
Jun 2006

Stuart E. Marton
200 East 27th Street, #14F
New York, NY 10016

Delivered by Hand

March 12, 2006

Departmental Disciplinary Committee
Supreme Court, Appellate Division
First Judicial Department
61 Broadway
New York, NY 10006
Attn: Joel Peterson, Legal Assistant

Re:   Complaint Against Donald Citak, Esq.
      Docket No. 2005.3319

Dear Mr. Peterson,

I am writing you in response to your letter dated February 10, 2006 stating that I must respond to Mr. Citak's submission to you within twenty days, which was extended to March 13, 2006 as per our telephone conversation.

Since filing the complaint with you, I have received no correspondence from Mr. Citak.

It is only after reading Mr. Citak's submission to you that I realize what Mr. Citak did and did not do in representing me. My below response takes into account my now fuller understanding.

To begin with, not only was Mr. Citak consistently late in responding to and often ignored my many inquiries as to the status of my case, and not only did he fail entirely to inform me that my case had been dismissed by the AAA, but most importantly, Mr. Citak submitted an incorrect document to the AAA, which error caused the dismissal of my case by the AAA.

The AAA dismissed my case because Mr. Citak incorrectly represented to the AAA that the language requiring arbitration had been stricken from the contract, which in fact, is untrue. The contract that I signed with Hogan Contracting, Inc., my general contractor, contained general conditions, in which section 4 requires arbitration. At no time were those conditions stricken from the contract. In fact, I had never seen the

general conditions prior to when I gave them to Mr. Citak on November 8, 2000. The only reason Mr. Citak had a copy of the general conditions with provisions that had been stricken was because I had given him a copy of the general conditions obtained by me from a friend of mine. When I gave that copy of the general conditions to Mr. Citak, I attached a memo clearly stating that they were not from my specific contract but that I had obtained them from someone else and was giving them to him for his general information. Please refer to Exhibit 5 of Mr. Citak's submission to you for a copy of my November 8, 2000 memo. In fact, if you look at the general conditions that I supplied to Mr. Citak (please refer to Mr. Citak's Exhibit 2), they contain in section 4.1.1 a reference to "A. Epstein & Associates." I have no idea who this person is but this person certainly did not represent my architect.

By submitting these general conditions to the AAA, Mr. Citak caused my case to be dismissed by the AAA. (Mr. Citak is apparently still under the misunderstanding that these marked-up general conditions apply to my contract since he submitted them to you in his Exhibit 2.) Not only did Mr. Citak make this gross error, but Mr. Citak compounded his gross error by failing to inform me that the AAA had dismissed the case. I did not find out that the case had been dismissed by the AAA until I contacted the AAA myself in November 2004, eleven months after it had been dismissed, and only because Mr. Citak refused to respond to my numerous requests for a status update on my case, and I reached out on my own.

Mr. Citak isn't clear as to what he thinks when he submitted someone else's copy of the general conditions to the AAA. Furthermore, Mr. Citak isn't clear as to why he did nothing once the AAA dismissed the case (due to its belief that the arbitration clause had been stricken). I do not understand why Mr. Citak did not correct this obvious error before the AAA, or at least, return to Court. Instead, Mr. Citak did nothing.

Had Mr. Citak believed that the provision regarding arbitration had been stricken, he certainly should have returned to Court to tell Judge Madden that the case did not require arbitration. However, Mr. Citak never made such an argument to the Court. Instead, he drafted an affidavit for me to sign and counseled me to state only that I had never seen or read the general conditions. Judge Madden rightly determined that whether or not I read the general conditions, they applied, and arbitration was required. Again, if Mr. Citak believed that the general conditions requiring arbitration had been stricken, he both should have had me argue that to the Court on the Motion Dismiss, and he should have gone back to the Court after the AAA dismissed the arbitration. Instead, Mr. Citak did nothing.

In terms of the tort and fraud claims that Mr. Citak counseled me to file, Mr. Citak does not address why he would counsel me to file what he now states are claims that have "shortcomings." I do not understand why Mr. Citak would counsel me to file what he now believes are frivolous claims.

In terms of the arbitration, Mr. Citak states that he did not file for arbitration because I did not provide him with the required disbursement. This is incorrect as Mr.

2

Citak did in fact file for and pay the required fee to the AAA for mediation, which under the general conditions is the first step in the arbitration process. Please refer to Mr. Citak's Exhibits 31 and 32.

Moreover, the letters from the AAA to Mr. Citak (refer to Mr. Citak's Exhibit 33) clearly state that the case was filed and paid for by Mr. Citak, but was dismissed by the AAA because the AAA (due to Mr. Citak's filing of an incorrect document) believed that the arbitration requirement in the general conditions had been stricken.

In terms of communication, Mr. Citak denies that he failed to communicate with me and specifically states that there was no "activity" on my case after December 3, 2003. This is untrue. After this date, in addition to phone calls, I sent Mr. Citak faxes on March 2, 2004 and June 4, 2004, and a letter on September 3, 2004 (mailed certified, return receipt requested). Please refer to my Exhibit 1.

In terms of missing a meeting, Mr. Citak claims that I failed to show up at a scheduled meeting on December 3, 2003. This is untrue. My wife and I attended this meeting with Mr. Citak and I referred to this meeting in subsequent faxes to Mr. Citak: I reference the meeting in my March 2, 2004 fax and specifically cite the December meeting in a June 4, 2004 fax. Please refer to my Exhibit 1.

In terms of when I hired Mr. Citak, he correctly points out that I did not hire him in April 2000. This is a typographical error. However, Mr. Citak is in error when he writes that I retained him in July 2002. In fact, I retained Mr. Citak in November 2000 as Mr. Citak wrote in his letter to Hogan Contracting dated November 15, 2000. And Mr. Citak's initial retainer agreement is dated December 6, 2000. (In July 2002, Mr. Citak and I agreed to change his compensation for the services he had been performing since November 2000.) Please refer to my Exhibit 2.

There are other errors in Mr. Citak's response but since they are not particularly relevant to the dismissal of my claim, I will not address them at this time.

In conclusion, please consider that not only did Mr. Citak repeatedly fail to respond to my inquiries over the years and in the end, he failed entirely to inform me that the AAA had dismissed my case, but it was his own error that caused the dismissal. Mr. Citak's submission fails to respond to this point. Now I am left without a remedy against my contractor.

Sincerely,

3