UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
CITAK & CITAK, DONALD CITAK and
BURTON CITAK,

                     Plaintiffs,                    Civil Action No. 07 CIV 5459

                    -against-

THE ST. PAUL TRAVELERS COMPANIES,
INC. a/k/a ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,

                    Defendant.
-----------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS COMPLAINT

Of Counsel:
Lisa L. Shrewsberry
Jonathan R. Harwood

TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP
Attorneys for Defendants
Mid-Westchester Executive Park
Seven Skyline Drive
Hawthorne, New York 10532
(914) 347-2600

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT .............................................. 1

II.  STATEMENT OF FACTS ................................................. 1

III. ARGUMENT ........................................................... 6

     THE CITAK FIRM HAD A REASONABLE BASIS
     TO BELIEVE THAT ACTS COMMITTED PRIOR
     TO THE POLICY PERIOD WOULD LEAD TO A
     CLAIM DURING THE POLICY PERIOD .................................... 6

IV.  CONCLUSION ........................................................ 13

# TABLE OF AUTHORITIES

## Cases

*Bellefonte Insurance Co. v. Eli D. Albert, P.C.*,
  99 A.D.2d 947, 472 N.Y.S.2d 635 (1st Dep't 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 13

*Ingalsbe v. Chicago Insurance Co.*,
  270 A.D.2d 684, 704 N.Y.S.2d 697 (3d Dep't 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11-13

*Sirignano v. Chicago Insurance Co.*,
  192 F.Supp.2d 199 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-11, 13

*Sparacino v. Pawtucket Mutual Insurance Co.*,
  50 F.3d 141 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10


## Statutes

Federal Rules of Civil Procedure Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 13

## PRELIMINARY STATEMENT

This memorandum of law is submitted on behalf of defendant The St. Paul Travelers Companies, Inc. a/k/a St. Paul Fire and Marine Insurance Company (referred to hereinafter as "St. Paul" or "defendant") in support its motion to dismiss the complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In this matter, plaintiffs seek a declaratory judgment as to coverage under a Lawyers Professional Liability Policy issued by St. Paul. St. Paul has denied plaintiffs' request for coverage on the grounds that, prior to the inception of the policy, plaintiffs knew or could have reasonably foreseen that their alleged error, omission or negligent act prior to the policy period would lead to a claim during the policy period. As discussed in detail below, the applicable policy language and the relevant case law supports this denial of coverage and, as a result, the complaint in this action should be dismissed in its entirety.

## STATEMENT OF FACTS

This declaratory judgment action was commenced in the Supreme Court of the State of New York, County of New York by plaintiff's, Citak & Citak, Donald Citak and Burton Citak (collectively "the Citak firm"). St. Paul subsequently removed the action to this court, on diversity of jurisdiction grounds. Plaintiffs then moved to remand the action to state court and the court denied that motion. By stipulation, plaintiffs have since served and filed an amended complaint, a copy of which is annexed as Exhibit A to the declaration of Jonathan R. Harwood. In this action, the Citak firm seeks a declaration of coverage for a claim made against it by a former client, under Lawyers Professional Liability Policy no. 507JB0670, issued to the Citak firm by St. Paul Travelers ("the Policy"). The Policy was in effect for the policy period of April 28, 2006 to April 28, 2007. Exhibit 1 to the amended complaint.

The claim against the Citak firm, referenced above, was asserted by Stuart and Carina

Marton, former clients of the Citak firm. Harwood Dec., Ex. A. On or about November 2, 2006, the Martons commenced an action against the Citak firm in the Supreme Court of the State of New York, County of New York. A copy of the complaint (referred to hereinafter as "the *Marton* Complaint") in that action is annexed as Exhibit B to the Harwood Declaration. According to the *Marton* Complaint, the Martons retained the Citak firm to represent them in a breach of contract action against a contractor retained to perform renovations for the Martons. Harwood Dec., Ex. B at ¶¶6-8. In the *Marton* complaint, plaintiffs allege that the contract in question contained the following terms: any claim under the contract was to be initiated within 21 days of the occurrence of the event in question or 21 days after the claimant became aware of the condition; claims under the contract were to be referred to the Martons' architect for decision and that such a decision was a condition precedent to any mediation, arbitration or legal proceeding; and any effort to mediate a claim pursuant to the Construction Industry Mediation Rules of the American Arbitration Association (AAA) was a condition precedent to arbitration or any legal or equitable proceedings; and a claim not resolved by mediation must be arbitrated pursuant to the Construction Industry Arbitration Rules of the AAA. Harwood Dec., Ex. B at ¶¶11-13.

According to the *Marton* complaint, the Citak firm failed to send notice of the claim to the contractor and the Marton's architect within the required time and also failed to initiate mediation or arbitration proceedings, as required by the contract. Harwood Dec., Ex. B at ¶15. It is further alleged that the Citak firm commenced an action in the Supreme Court of the State of New York, County of New York without first submitting the claim to the Marton's architect or commencing mediation or arbitration, as required by the contract. *Id.* at ¶18. In response, the contractor's attorneys moved to dismiss the complaint on the grounds that the Martons had not complied with

2

the mediation and arbitration provisions of the contract and because the time in which to submit any complaints to the architect , as required by the contract, had elapsed. *Id.* at ¶20-21. In October 2003, the court granted the motion to dismiss, based on the failure to mediate or arbitrate. *Id.* at ¶22.

The Martons further alleged that, after the suit was dismissed the Citak firm submitted a Demand for Arbitration and a request for a prior mediation. Harwood Dec., Ex. B at ¶23. This was done in November 2003, over two years before the Policy was issued. Upon receipt of the Demand for Arbitration a case manager for AAA contacted the Citak firm and advised that the arbitration clause had been crossed out in the copy of the contract provided with the demand and requested a Submission of Dispute Resolution form, signed by both parties. *Id.* at ¶¶26-27. In December 2003, the AAA case manager wrote to the Citak firm again and advised that it was returning the Demand for Arbitration and the filing fee, as the information it requested had not been provided. *Id.* at ¶29. It is alleged that the Citak firm met subsequently with the Martons and advised that they would refile the case in court if the contractor did not agree to arbitration. *Id.* at ¶30. The Martons were not advised, however, that the Citak firm had submitted the wrong contract to AAA. *Id.* at ¶31.

While the Citak firm then requested that the contractor's counsel sign a submission to dispute resolution form, the contractor's counsel did not return it and the Citak firm did not take any further steps to commence a mediation, arbitration or to return the case to the Supreme Court. Harwood Dec. Ex. B at ¶¶32-33. Additionally, the Martons allege that the Citak firm failed to advise them that AAA had closed its file and returned the Demand for Arbitration. *Id.* at ¶34. The Martons further allege that they first learned of the dismissal of the arbitration in November 2004, through a case manager at AAA. *Id.* at ¶¶34-36. The *Marton* complaint seeks $60,000 in damages. *Id.* at p.9.

Prior to filing the legal malpractice action against the Citak firm, Mr. Marton filed a

3

complaint with the Departmental Disciplinary Committee of the Supreme Court, Appellate Division, First Department ("the Disciplinary Committee"). Harwood Dec., Ex. A at ¶10. This complaint was filed in December 2005. Harwood Dec., Ex. C. The allegations in that complaint are virtually identical to those contained in the *Marton* complaint. In the disciplinary complaint, Mr. Marton alleges that the Citak firm first filed suit against his contractor in state court, but that the case was dismissed because of the arbitration clause. *Id.* He further complains that the Citak firm then filed for arbitration but that matter was rejected by AAA. *Id.* It is further alleged that the Citak firm advised Mr. Marton that it would recommence the matter in court if the contractor did not agree to submit to arbitration. *Id.* In a March 16, 2006 letter to the Disciplinary Committee, Mr. Marton stated that, as a result of the Citak firm's actions he has been "left without a remedy against [his] contractor." Harwood Dec., Ex. D.

It is alleged that at a mediation session held by the Disciplinary Committee, the mediator stated that the Martons may have a remedy in a legal malpractice actions against the Citak firm. Harwood Dec., Ex. A at ¶10. On June 15, 2006, the Citak firm advised JLT Services Corp. ("JLT"), the producer of the policy, of a potential claim. Id. at ¶11. That notice, which was the first sent by the Citak firm, was submitted to St. Paul. St. Paul acknowledged receipt of the notice in a June 20, 2006 letter, a copy of which is annexed as exhibit 4 to the amended complaint. Thereafter, on June 23, 2006, St. Paul wrote to the Citak firm and advised it that there would not be any coverage for a claim by the Martons. Harwood Dec., Ex. E. In denying coverage, St. Paul referred to policy exclusion G, which states that the policy does not apply to "'claims' arising out of any error, omission, negligent act or 'personal injury' occurring prior to the inception date of the Policy if any insured prior to the inception date knew or could have reasonably foreseen that such error, omission,

4

negligent act or 'personal injury' might be expected to be the basis of a 'claim' or 'suit.'" *Id.* St. Paul noted that the disciplinary complaint had been filed in December 2005 and the Citak firm had filed a response in February 2006, all of which occurred before the inception of the policy. *Id.* The letter also noted that the Citak firm's January 20, 2006 application for insurance stated that it had not been the subject of a disciplinary complaint.[1] *Id.* (A copy of the application is attached to the policy, which is also annexed to the amended complaint as Exhibit 1.) This was not true.

According to the complaint in the instant action, the Citak firm was first served with the *Marton* complaint in February 2007. Harwood Dec., Ex. A at ¶15. That complaint was forwarded to St. Paul and, in correspondence dated March 5, 2007, St. Paul reiterated its denial of coverage. *Id.* at ¶¶16-17. A copy of that letter is annexed to the amended complaint as Exhibit 8.

---

[1] This information appears in response to question 35 of the application, which is on page 5.

5

**ARGUMENT**

### THE CITAK FIRM HAD A REASONABLE BASIS TO BELIEVE THAT ACTS COMMITTED PRIOR TO THE POLICY PERIOD WOULD LEAD TO A CLAIM DURING THE POLICY PERIOD

In their first cause of action, plaintiffs contend that they are entitled to defense and indemnification under the policy for the *Marton* action and that St. Paul's refusal to provide such coverage constitutes a breach of the insurance policy. Application of the relevant policy language, the undisputed facts and the applicable law demonstrate that this is simply not the case.

As noted above, exclusion G of the Policy states that it does not apply to:

> 'claims' arising out of any error, omission, negligent act or 'personal injury' occurring prior to the inception date of the Policy if any insured prior to the inception date knew or could have reasonably foreseen that such error, omission, negligent act or 'personal injury' might be expected to be the basis of a 'claim' or 'suit.'

Harwood Dec., Ex. A at Exhibit 1. The determination of whether coverage exists for the *Marton* action is thus based on whether the insureds had a reasonable basis to believe, prior to issuance of the Policy on April 28, 2006, that they had breached a professional duty or to foresee that a claim arising out of such breach would be made against them. The undisputed facts, as plead in the complaint and supported by the exhibits attached thereto, demonstrate that the above-quoted policy language precludes coverage for the *Marton* matter.

In December, 2005, when the Martons filed their complaint with the Disciplinary Committee, Mr. Marton stated that he retained the Citak firm to represent him "against a contractor that walked away from renovating my home, in violation of a contract." Harwood Dec., Ex. C. The disciplinary complaint goes on to state that Donald Citak filed a complaint "many months afterwards" and that the action was dismissed because it should have been submitted to arbitration. *Id.* Mr. Marton then

6

stated that an arbitration was filed with the American Arbitration Association ("AAA"), but it "apparently refused to accept" the demand papers. *Id.*   Mr. Marton stated that Mr. Citak also advised him that, if the contractor would not agree to arbitrate, he would return the matter to court, but Mr. Citak never took this step. *Id.* Similar allegations are made in the complaint in the *Marton* action.

Donald Citak submitted a lengthy response to the disciplinary complaint in correspondence dated February 8, 2006, two months before the Policy went into effect. In that letter, Mr. Citak discussed the commencement of the action against the contractor and the subsequent motion to dismiss filed in response. Harwood Dec., Ex. F at 7-8. As acknowledged in that letter, in October 2003, almost three years before the Policy went into effect, the Citak firm knew that the action against the contractor had been dismissed. *Id.* at 8. The Citak firm then proceeded to file a demand for arbitration on Mr. Marton's behalf. *Id.* In response to the filing, the AAA advised the Citak firm that it needed to provide a Submission to Dispute Resolution form, signed by counsel for all parties. *Id.* at 9. The form was sent to the contractor's counsel. *Id.* The AAA also advised the Citak firm that it was closing its file on the matter and returned the initial filing. *Id.* The Citak firm was thus also aware that it had not commenced an arbitration proceeding on behalf of Mr. Marton. Certainly by the time Mr. Marton filed the disciplinary complaint, if not sooner, the Citak firm knew, or reasonably should have known, that Mr. Marton was not pleased with the work and was likely to pursue a claim against the Citak firm.

Mr. Marton responded to Mr. Citak's letter in correspondence dated March 12, 2006, a month before the Policy was issued. Harwood Dec., Ex. D. In that letter, Mr. Marton stated that the AAA dismissed the arbitration because it was under the belief that the arbitration provision in the contract

7

had been stricken. *Id.* at 1. This, he asserted, was the result of the Citak firm's failure to provide the AAA with the proper agreement between Mr. Marton and the contractor. *Id.* at 1-2. Mr. Marton also stated that Mr. Citak "failed to inform me that the AAA had dismissed my case" and that "it was his own error that caused the dismissal." *Id.* at 3. Finally, Mr. Marton stated that, as a result of the Citak firm's actions, "I am left without a remedy against my contractor." *Id.*

All of the foregoing facts lead to the inescapable conclusion that the Citak firm knew, well before the policy at issue went into effect, that Mr. Marton had lost the opportunity to bring a claim against the contractor and that he blamed the Citak firm for that situation. This lost opportunity was the direct result of the Citak firm's alleged failure to properly commence either an action in court or an arbitration proceeding. Moreover, the Citak firm knew, when it completed the policy application, that it was the subject of a disciplinary complaint filed by Mr. Marton. Despite this, in the application it denied the existence of any such filing. Harwood Dec. Ex. A at Exhibit 1. As of April 28, 2006, therefore, the insured clearly had a reasonable basis to believe that it had breached a professional duty and that it was foreseeable that Mr. Marton would assert a claim against it arising out of its acts, errors or omissions.

The Citak firm asserts that it had no reason to believe a claim would be made against it until the mediation conducted by the Disciplinary Committee, where the mediator suggested that a malpractice suit would be a more appropriate way to address the Martons' claims. This assertion is premised on the argument that there could be no reasonable basis to believe a claim might be made until one is specifically threatened. Such an argument evidences a fundamental misreading of the applicable policy wording. As noted above, the operative policy language provides that there is no coverage for "'claims' arising out of any error, omission, negligent act or 'personal injury' occurring

8

prior to the inception date of the Policy if any insured prior to the inception date knew or could have reasonably foreseen that such error, omission, negligent act or 'personal injury' might be expected to be the basis of a 'claim' or 'suit.'" In every instance in which the New York courts have applied this or similar language they have consistently looked at what an attorney should have objectively known, not what he claims his subjective knowledge was. *See Sirignano v. Chicago Insurance Co.*, 192 F.Supp.2d 199 (S.D.N.Y. 2002); *Ingalsbe v. Chicago Insurance Co.*, 270 A.D.2d 684, 704 N.Y.S.2d 697 (3d Dep't 2000); *Bellefonte Insurance Co. v. Eli D. Albert, P.C.*, 99 A.D.2d 947, 472 N.Y.S.2d 635 (1st Dep't 1984). The appropriate inquiry, as established in these cases, is whether the facts at issue would lead a reasonable attorney to expect that his conduct could result in a future claim. *Id.* An attorney's expressed, subjective belief is of no moment. *Id.*

The holding in *Sirignano* is highly instructive. In *Sirignano*, an attorney had been retained to represent the plaintiff in a medical malpractice case. When the case was called on the trial calendar, both attorneys appeared and stated that they were ready for trial. The case was marked off the calendar, however, because plaintiff had not yet provided expert designations. After fifteen months of inactivity, defendant's counsel moved to have the case dismissed as abandoned. The Clerk of the Court subsequently entered judgment dismissing the case and counsel's motion to vacate the default was denied.

Counsel first notified his malpractice insurer that a claim was possible ten months after the case had been dismissed. In response, the carrier requested a copy of counsel's file. Six days later, the insured was contacted by attorneys for his former client concerning a legal malpractice claim. The insured forwarded his file to the insurer nine days after that. After a suit was filed, the insurer denied coverage based on policy language that required the insured to give timely notice of "any

9

negligent act, error or omission . . . in the rendering or failure to render Professional Services which could reasonably be expected to be the basis of a Claim." *Sirignano*, 192 F.Supp.2d at 202.

While the *Sirignano* court was primarily interested in assessing whether the insured had provided timely notice of the potential claim, its analysis in this regard is applicable to the instant matter. In both *Sirignano* and the instant matter, the key question is whether the insureds "reasonably expected" a claim would be made. The *Sirignano* court noted that application of that language should not take into effect the insured's subjective belief as to the possibility that a claim might be made. *Id.* at 204. Rather, the court must apply an objective analysis, looking to whether "any reasonable attorney-insured could have reasonably expected a claim." *Id.*; *see also Sparacino v. Pawtucket Mutual Insurance Co.*, 50 F.3d 141, 143 (2d Cir. 1995). The *Sirignano* court then went on to state that counsel was aware of each of the series of events that gave his client the right to recover against him, from his failure to have the case placed back on the trial calendar to the dismissal of the suit. *Id.* His knowledge of these events, the court ultimately found, provided counsel with objective knowledge that a claim might be made against him. *Id.* Notably, the court gave absolutely no consideration to the fact that counsel was pursuing appeals of the dismissal up until the time he put his carrier on notice of the claim. The operative event, for knowledge purposes, was the initial dismissal of the suit.

Application of the principles utilized in *Sirignano* leads to the same result in the instant case. In October 2003, the Citak firm knew that the suit it had commenced in the Supreme Court of the State of New, County of New York had been dismissed on the grounds that Mr. Marton was obligated to submit the matter to arbitration. Shortly thereafter, the Citak firm was aware that AAA had rejected the arbitration request because the agreement submitted to it did not contain an

arbitration clause. The Citak firm was also advised that it needed to provide a Submission of Dispute Resolution form to AAA in order to proceed with the arbitration. No such form was ever submitted. Finally, the Citak firm knew in December 2005 that Mr. Marton was claiming that he had been harmed by the Citak firm's failure to do all of these things. In light of the foregoing, the Citak firm, like counsel in *Sirignano*, should have known that its client had lost the opportunity to pursue his claim. Knowing this, and that Mr. Marton was blaming them for this situation, the Citak firm had reason to believe that a claim would be made against it by Mr. Morton. Since this knowledge existed prior to April 28, 2006, the Citak firm is not entitled to any coverage under the St. Paul policy.

The decision in *Ingalsbe* compels the same result. There, the insured was sued for malpractice for allowing a statute of limitations to expire without bringing a suit. Two different insurers denied coverage, although for different reasons. Particularly relevant to the instant matter, Chicago Insurance Company ("Chicago") denied coverage because the conduct at issue took place prior to its policy period. Chicago's policy, like St. Paul's in the instant matter, only covered such actions where the insured, prior to the policy period, had no "reasonable basis to believe that he breached a professional duty or to foresee that a claim would be made against him." *Ingalsbe*, 270 A.D.2d at 685, 704 N.Y.S.2d at 699. The Appellate Division held that counsel's knowledge, prior to the policy period, that he had failed to file a suit within the statute of limitations provided him with a reasonable basis to believe a claim would be made against him. *Id.* This, despite the insured's claim that he did not subjectively believe a claim would be made against him, precluded him from obtaining coverage under the Chicago policy. *Id.*

The same rationale was applied in *Bellefonte*. There, as in *Ingalsbe*, an attorney failed to

11

preserve his client's claim before the statute of limitations expired. As a result, the client's case was dismissed by the court and the dismissal was upheld on appeal. The attorney did not notify his insurer of the dismissal until after the decision by the appellate court, which was 18 months after the trial court dismissed the suit. The policy at issue in *Bellefonte* required the insured to provide notice, as soon as practicable, "upon the insured becoming aware of any act or omission which might reasonably be expected to be the basis of a claim or suit . . ." *Bellefonte*, 99 A.D.2d at 948, 472 N.Y.S.2d at 635. The *Bellefonte* court held that the dismissal of the complaint "should have caused [counsel] to recognize the very real possibility" that a malpractice suit might be filed. *Bellefonte*, 99 A.D.2d at 948, 472 N.Y.S.2d at 637. Any alleged subjective belief that a claim would not be made was irrelevant. *Id.* Notably, in each of the cases discussed above, the courts imposed the objective knowledge on insureds without any indication that their clients had complained about the conduct at issue. In the instant case, the Martons had gone as far as to file a disciplinary complaint against the Citak firm before the policy was issued. This would have lead any reasonable attorney to suspect that the conduct at issue may be the subject of a claim in the future.

The *Ingalsbe, Bellefonte* and *Sirignano* decisions compel dismissal of the instant action. The insureds here knew, long before the St. Paul policy was issued, that the trial court had dismissed the initial suit filed on behalf of Mr. Martons. It also knew that the AAA had rejected its demand for arbitration and required that a Submission to Dispute Resolution form be provided before any such proceeding could be commenced. The Citak firm did not submit that form, or take any other steps to revive Mr. Marton's claim. Finally, in December 2005, the Citak firm received Mr. Marton's complaint to the Disciplinary Committee, in which he identified all of these actions and asserted that they left him without any remedy against the contractor. Like the insureds in *Ingalsbe, Bellefonte*

12

and *Sirignano*, these events gave the Citak firm an objective reason to believe that a claim might be made against it by Mr. Martons.  As this came prior to April 28, 2006, there is no coverage for the *Marton* action under the clear and unambiguous language of the St. Paul policy.

## CONCLUSION

Based upon the foregoing, St. Paul respectfully submits that it is entitled to an dismissing the complaint in its entirety,  pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, along with such other relief the court deems appropriate.

Dated: Hawthorne, New York
       February 8, 2008

TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP

_____

Jonathan R. Harwood (JH 9060)
Attorneys for Defendant The St. Paul Travelers Companies,
Inc. a/k/a St. Paul Fire and Marine Company
Mid-Westchester Executive Park
Seven Skyline Drive
Hawthorne, New York 10532
(914) 347-2600

13

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK       )
                             ) ss.:

COUNTY OF WESTCHESTER    )

        Christina Golino, being duly sworn, deposes and says:

        That deponent is not a party to the within action and is over 18 years of age.

        That on the 8th day of February 2008, deponent served the within **MEMORANDUM OF**

**LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** upon the attorney(s) for the

respective party(ies) in this action, at the address listed below, such address designated by said

attorney for that purpose via **Electronic Case Filing System** .

TO:    Peter Wessel, Esq.
       Law Office of Peter Wessel, PLLC
       270 Madison Avenue, Suite 1203
       New York, New York 10016
       Mineola, New York 11501
       E-mail: Peterwessel@wessellaw.com

                                            CHRISTINA GOLINO

Sworn to before me this
8th day of February, 2008

Notary Public

**CLAUDINE N. BONCI**
**Notary Public, State of New York**
**No. 01BO5015056**
**Qualified in Westchester County**
**Commission Expires July 12, 2011**