UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CITAK & CITAK, DONALD CITAK and
BURTON CITAK,

                     Plaintiffs,

-  against –

THE ST. PAUL TRAVELERS COMPANIES,
INC., a/k/a ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,

                     Defendant.
-----------------------------------------------------------X

**Civil Action No.
07 CIV 5459 (WHP)**

## PLAINTIFFS' MEMORANDUM OF LAW

### IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
### AND
### IN SUPPORT OF PLAINTIFF'S CROSS-MOTION TO AMEND COMPLAINT

LAW OFFICE OF PETER WESSEL, PLLC

By: _____

PETER WESSEL (PW  4164)
Attorney for Plaintiffs
CITAK & CITAK, DONALD L. CITAK
and BURTON CITAK
270 Madison Avenue, Suite 1203
New York, NY 10016
(212) 532-9700
(212) 202-7522 (fax)

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ...............................................................................1

II.   COUNTER-STATEMENT OF FACTS ........................................................................2

        A.  Plaintiffs' Application for Insurance; Insurance Policy Issued .........................2

        B.  Relevant Background.......................................................................................3

III.  JUSTICE REQUIRES THAT PLAINTIFFS BE PERMITTED TO
      AMEND THEIR COMPLAINT PURSUANT TO FRCP 15(a)(2) ...............................9

IV.   STANDARD OF REVIEW ...................................................................................11

V.    ARGUMENT.......................................................................................................12

        POINT I:  THERE WAS NO MISREPRESENTATION IN PLAINTIFFS'
        APPLICATION FOR INSURANCE COVERAGE BY DEFENDANT
        CONCERNING A PENDING DISCIPLINARY COMPLAINT...........................12

        POINT II:  PLAINTIFFS HAD NO REASONABLE BASIS TO
        FORESEE A MALPRACTICE CLAIM BY THE MARTONS BASED
        ON THEIR DDC STATEMENT...........................................................................13

            A: A Disciplinary Complaint Itself and Without Regard to
            Its Content Is Not Reasonable Notice of a Potential Malpractice Claim..13

            B: Defendant's Cases Are Inapposite Because They All
            Involve Fatal and Irreversible Errors Made by Attorneys  ................. 16

            C: The Martons' DDC Statement Did Not Provide a
            "Reasonable Basis to Foresee a Claim".....................................................20

VI.   CONCLUSION.......................................................................................................23

## TABLE OF AUTHORITIES

<u>Cases</u>

*Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.,*
2008 WL 219765 (S.D.N.Y. 2008) .............................................................................12

*Bell Atlantic Corp. v. Twombly,*
127 S.Ct. 1955 (2007)...............................................................................................12

*Bellafonte Ins. Co. v. Eli D. Albert, P.C.,*
99 A.D.2d 947, 472 N.Y.S.2d 635 (1st Dep't 1984) ...................................................18

*Bellen v. Weiser,*
2007 WL 2979827(S.D.N.Y. 2007).............................................................................10

*Bernheim v. Litt,*
79 F.3d 318 (2d Cir. 1996)..........................................................................................12

*Block v. First Blood Assocs.,*
988 F.2d 344 (2d Cir. 1993).........................................................................................11

*Bridgeport Music Inc. v. UMG Recordings, Inc.,*
2008 WL 113672 (S.D.N.Y. 2008)...............................................................................10

*Cade & Saunders, P.C. v. Chicago Ins. Co.,*
332 F. Supp. 2d 490 (N.D.N.Y.2004)...........................................................................15

*Cevasco v. Nat'l R.R. Passenger Corp.,*
2007 WL 4440922 (S.D.N.Y. 2007)..........................................................................9, 10

*Chicago Ins. Co. v. Kreitzer & Vogelman,*
2000 WL 16949 (S.D.N.Y. 2000)..................................................................................13

*Coleman v. Ramada Hotel Operating Co.,*
933 F.2d 470 (7th Cir. 1991) ........................................................................................10

*Evanston Ins. Comp. v. GAB Business Services,*
132 A.D.2d 180, 185, 521 N.Y.S.2d 692 (1st Dept. 1987)............................................15

*Fogelson v. Home Ins. Co.,*
129 A.D.2d 508, 514 N.Y.S.2d 346 (1st Dept. 1987)...................................................19

*Goldman v. Belden,*
754 F.2d 1059 (2d Cir. 1985).......................................................................................12

*Harper v. Port Authority of New York & New Jersey,*
2006 WL 1519985 (S.D.N.Y. 2006) ............................................................................... 11

*In re 1st Rochdale Co-op Group, Ltd.,*
2008 WL 170410 (S.D.N.Y. 2008) .................................................................................. 12

*Ingalsabe v. Chicago Ins. Co.,*
270 A.D.2d 684, 704 N.Y.S.2d 697 (2d Dep't 2000) ..................................................... 18

*Ins. Corp. Of America v. Dillon, Hardamon & Cohen,*
725 F. Supp. 1461 (N.D.Ind. 1988) ................................................................................ 21

*Patane v. Clark,*
508 F.3d 106 (2d Cir. 2007) ........................................................................................... 12

*Phillips v. Transamerica Ins. Co.,*
107 Misc.2d 162, 433 NYS2d 555 (Supreme Ct. Suffolk Co. 1980) ................. 13, 14, 19

*Purcigliotti v. Risk Enter. Mgmt Ltd.,*
240 A.D.2d 205, 658 N.Y.S.2d 296 (1st Dep't 1997) .................................................... 19

*Reibman v. Senie,*
302 A.D.2d 290, 756 N.Y.S.2d 164 (1st Dep't 2003) .................................................... 22

*Scottish Air Int'l v. British Caledonian Group, PLC,*
152 F.R.D. 18 (S.D.N.Y. 1993) ...................................................................................... 10

*Sirignano v. Chicago Ins. Co.,*
192 F. Supp. 2d 199 (S.D.N.Y. 2002).......................................................................17, 18

*Sparacino v. Pawtucket Mut. Ins. Co.,*
50 F.3d 141 (2d Cir. 1995).............................................................................................. 20

*Sullivan & Cromwell LLP v. Charney,*
15 Misc.3d 1128(A), 841 N.Y.S.2d 222 (Supreme Ct. N.Y. Cty. 2007)......................... 14

**Statutes**

Federal Rules of Civil Procedure Rule 15(a)(2) ................................................................ 9

Federal Rules of Civil Procedure Rule 12(b)(6) .............................................................. 11

**Treatises**

Kroll, THE PROFESSIONAL LIABILITY POLICY "CLAIMS MADE",
13 Forum 842, 843 (1978) .............................................................................................. 21

## Preliminary Statement

This memorandum of law is submitted on behalf of Plaintiffs CITAK & CITAK, DONALD CITAK and BURTON CITAK (hereinafter "Plaintiffs") in opposition to Defendant THE ST. PAUL TRAVELERS COMPANIES, INC. a/k/a ST. PAUL FIRE AND MARINE INSURANCE COMPANY (hereinafter "Defendant") motion to dismiss Plaintiffs' Amended Complaint herein and in support of Plaintiffs' Cross-Motion to further amend the Amended Complaint herein.

Plaintiff submits that Defendant has wrongfully refused to provide insurance coverage to Plaintiffs in an underlying malpractice suit brought by former clients. The denial of such coverage is without merit and unsubstantiated by the applicable facts and law, which reveal that Plaintiffs did not have reason to anticipate that a potential malpractice claim would be asserted until June 2006, when they in fact notified Defendant. Additionally, Plaintiffs were not aware that a complaint had been sent to the Departmental Disciplinary Committee of the First Judicial Department of the Supreme Court of the State of New York (hereinafter the "DDC") until after they applied for insurance coverage with Defendant. As such, Defendant's motion should be denied in its entirety. Defendant should be directed to defend and indemnify Plaintiffs in the underlying malpractice suit.

Justice further requires that Plaintiffs be permitted to amend one paragraph of the Amended Complaint to reflect the date on which Plaintiffs actually received notice of the complaint sent to the DDC. This amendment, based on a newly found document in the DDC files, permits Plaintiffs to refute Defendant's unfounded allegation that they somehow improperly completed their application for insurance coverage. No prejudice results to Defendant

1

since no substantial investigation is required at this stage of the proceeding. Therefore, Plaintiffs'
cross-motion for leave to re-amend their Amended Complaint should be granted in its entirety.

<b>COUNTER-STATEMENT OF FACTS</b>

The Court is also referred to the annexed Declaration of Donald Citak, dated February 28,
2008 (hereinafter "DCitak Declaration"), for details of the relevant facts and circumstances
herein. Plaintiffs Amended Complaint is annexed as <u>Exhibit "I"</u>. Plaintiffs' Proposed Second
Amended Complaint is annexed as <u>Exhibit "II"</u>. The only proposed new language is contained
in Paragraph 10; the only proposed new document is Exhibit 2A (Plaintiffs' January 27, 2006
letter).

**A.    <u>Plaintiffs' Application for Insurance; Issuance Policy Issued</u>**

Plaintiffs' application for a Lawyers Professional Liability Policy from Defendant was
completed on or about January 20, 2006.  See <u>Exhibit "I"</u> - Amended Complaint (specifically
Exhibit 1 annexed thereto).  In that application, Plaintiffs accurately answered question 35,
stating that they had not been the subject of a disciplinary complaint, since <u>as of that date</u>,
Plaintiffs were unaware of any such complaint. On or about January 27, 2006, Plaintiffs received
a letter from the DDC enclosing a document it had received from Stuart and Carina Marton
(hereinafter the "Martons' DDC Statement") and requesting a response from Plaintiffs.  See
<u>Exhibit "I"</u> – Amended Complaint (specifically Exhibit 2 annexed thereto) and <u>Exhibit "II"</u> –
Proposed Second Amended Complaint ¶10 (specifically Exhibit 2A annexed thereto). Defendant
received Plaintiffs' application on January 30, 2006 and thereafter issued its insurance policy to
cover Plaintiffs for acts of legal malpractice. See <u>Exhibit "I"</u> -- Amended Complaint ¶6
(specifically Exhibit 1 annexed thereto).

**B.**    **Background**

In November 2000, Stuart Marton approached Plaintiffs regarding a contract dispute that he and his wife (Carina) had with Hogan Contracting, Inc. (hereinafter "Hogan"), the general contractor with whom they had contracted to combine their two (2) adjoining Coop apartments on East 27th Street. Plaintiffs had a long-standing personal and professional relationship with Mr. Marton, who maintained a separate office on the same floor in the same building as Plaintiffs. Plaintiffs had also performed legal work for various relatives of Stuart Marton, on both personal matters as well as on litigation matters on behalf of corporate entities in which it is believed Mr. Marton had some ownership or beneficial interest. See Exhibit "I" – Amended Complaint ¶16.

The Martons were primarily concerned with revoking any authorization previously granted to Hogan for access to the Martons' Cooperative apartments. As a courtesy and accommodation and without receiving or discussing payment, on November 8, 2000, Plaintiffs wrote a letter to Hogan on the Martons' behalf regarding this renovation project. That letter to Hogan was the only action that the Martons authorized Plaintiffs to take at that time. No retainer agreement had been signed by the Martons with Plaintiff, nor was there any discussion of fees. After that letter was sent, Mr. Marton would come into Plaintiffs' office and seek advice on matters relating to his dispute with Hogan. On December 6, 2000, a letter was sent to Mr. Marton, setting forth the terms under which Plaintiffs would continue to render legal services to the Martons. The sum of $500.00 was then requested "to cover initial conference, consultations and communications". Exhibit "IV" to DCitak Declaration. Mr. Marton did not want to proceed with litigation at that time and personally came to Plaintiffs' offices on December 7, 2000 and paid $250.00 to cover the legal services provided by Plaintiffs to date. Exhibit "V" to DCitak Declaration. At no time did the Martons provide Plaintiffs with a signed copy of their contract

3

with Hogan containing the "General Conditions" purportedly referred to therein (which purportedly contained language directing all claims between the Martons and Hogan be brought to mediation/arbitration before the American Arbitration Association (hereinafter the "AAA"). Exhibit "VI" to DCitak Declaration.

Despite having offices on the same floor, between December 2000 and April 2002, the Martons did not contact Plaintiffs regarding their conflict with Hogan. In April 2002, Mr. Marton called Plaintiffs to discuss his dispute with Hogan.  In June 2002, Mr. Marton informed Plaintiffs that he wished to proceed to pursue his claim against Hogan. Because of the existing relationship with Mr. Marton, his extended family and their business interests, Plaintiffs agreed to the Martons' request to represent them on a contingency-fee basis and a Retainer agreement to that at effect was prepared and signed.

On July 23, 2002, Mr. Marton came to Plaintiffs' offices to review the Complaint that had been prepared for breach of contract lawsuit against Hogan in NYS Supreme Court. The decision to proceed with a judicial action rather than arbitration against Hogan was discussed by Plaintiffs at length with Mr. Marton. Mr. Marton emphasized his contention that, even though his contract referred to "General Conditions" directing claims there under to be arbitrated, he did not sign the General Conditions and did not believe they were part of his contract with Hogan. Plaintiffs also discussed with Mr. Marton that Hogan was a corporation with no known, identifiable assets, and for which there was no known insurance coverage. Mr. Marton acknowledged that he had failed to have Hogan post a performance bond regarding the work to be undertaken and that the Martons had failed to secure any personal guarantee from the principal of Hogan.

4

After the lawsuit was filed, Hogan moved to dismiss and compel arbitration. In opposing that motion, Mr. Marton stated in a sworn Affidavit that the General Conditions "should not even be considered" part of the Martons' agreement with Hogan because "neither [Hogan] or [the Martons] ever signed or initialed any copy of those General Conditions", nor had he even been presented with a copy of those General Conditions. Exhibit "VII" to DCitak Declaration. Mr. Marton was and is a sophisticated businessman, entrepreneur and real estate investor, who was careful about what he signed and knew exactly what he was attesting to and why.

On March 13, 2003, at the conclusion of oral argument of Hogan's motion to dismiss, Plaintiff Donald Citak was informed by Hogan's attorney that Hogan had no assets to speak of, had no available insurance coverage and could always cease business operations under that corporate name. This information was conveyed to Mr. Marton immediately following oral argument. Mr. Marton advised Plaintiff that he would await the Court's decision before deciding on a particular course of action.

Upon learning that the case was dismissed, the Martons informed Plaintiffs that they wished to proceed to arbitration against Hogan. By letter on November 19, 2003, Plaintiffs informed the Martons that additional fees were required to proceed to arbitration. Exhibit "IX" to DCitak Declaration. The Martons never paid Plaintiffs the monies required to proceed to arbitration as had been requested. Plaintiffs received a letter dated November 21, 2003 from the AAA, requesting that a form entitled "Submission to Dispute Resolution" be signed by representatives of both parties, which was subsequently sent to Hogan's attorneys. Exhibit "X" to DCitak Declaration.

After Plaintiffs apprised the Martons of the status, the need for the payment of fees to proceed to arbitration and the likely futility of being able to collect monies from Hogan, even if

5

they were successful going forward, The Martons scheduled an appointment to come to Plaintiffs' offices on December 3, 2003, to discuss the matter further. Prior thereto, Mr. Marton cancelled the meeting, advising Plaintiffs that if he wished to proceed further he would contact Plaintiffs. The Martons did not appear at Plaintiffs' offices on any occasion thereafter, nor did they ever provide the requisite money to pay the fees for arbitration. See Exhibit "I" - Amended Complaint ¶¶13-14. Thereafter, Plaintiffs did not hear from the Martons until January 27, 2006, when Plaintiffs received the Martons' DDC Statement from the DDC. See Exhibit "I" - Amended Complaint ¶10; Exhibit "II" – Proposed Second Amended Complaint ¶10 (specifically Exhibit 2A annexed thereto).

As a result of the Martons' cancellation of their appointment, refusal to re-schedule, failure to remit the arbitration fees, failure to communicate, and the likelihood of uncollectibility of monies form Hogan, Plaintiffs believed that the Martons had elected to abandon their claim and considered the matter to be closed. See Exhibit "I" - Amended Complaint ¶13-14.

On or about January 27, 2006, Plaintiffs received a letter from the DDC enclosing the Martons' DDC Statement.  See Exhibit "II" – Proposed Second Amended Complaint ¶10 (specifically Exhibit 2A annexed thereto).  Contrary to Defendant's unfounded assertion, the allegations in that Statement do not sound in legal malpractice and do not allege any conduct that constitutes legal malpractice. See Exhibit "I" – Amended Complaint ¶11, Defendant's Memo of Law p4. The Martons' DDC Statement makes no claim that they had sustained any damages, suffered any pecuniary loss or were harmed by Plaintiffs' actions. See Exhibit "I" - Amended Complaint ¶12(A)(i). When the Martons submitted their DDC Statement, the Statute of Limitations had not run in any prospective action against Hogan. The Martons were fully capable, intellectually and financially, of retaining other counsel or proceeding *pro se* to

6

prosecute their claim. See Exhibit "I" - Amended Complaint ¶11(C). Most importantly, the relief sought in the Martons' DDC Statement was to compel Plaintiffs to undertake further legal action on their behalf against Hogan: "I appreciate your efforts to understand why Mr. Citak ignores me and has not returned to court to represent me." See Exhibit "I" - Amended Complaint ¶11(B)(specifically Exhibit 2 annexed thereto). The Martons' DDC Statement does not contain any allegation of any actions or inactions, taken or failed to be taken, by Plaintiffs, which would result in damages to the Martons and thus constitute legal malpractice or form the basis of a malpractice lawsuit. See Exhibit "I" - Amended Complaint ¶12(A)(ii).

This Court should note that the Martons' DDC Statement is directed only at the conduct of Plaintiff Donald Citak. That statement does not refer to or discuss any conduct by Plaintiff Burton Citak or the law firm of Citak & Citak. See Exhibit "I" - Amended Complaint (specifically Exhibit 2 annexed thereto).

Following receipt of the Martons' DDC Statement, a response was submitted thereto to the DDC in February 2006. See Exhibit "I" - Amended Complaint ¶17; Harwood Declaration Exhibit F. On March 12, 2006, Mr. Marton submitted a Reply (hereinafter the "Martons' Reply") to Plaintiffs' Response. Harwood Declaration Exhibit D. In accordance with DDC practices and contrary to Defendant's baseless and inaccurate misstatements to the Court (see Def. Memo of Law p8), neither the Martons nor the DDC were obligated to provide a copy of the Martons' Reply to Plaintiffs, and neither of them did so. See Exhibit "I" - Amended Complaint ¶18. Since Plaintiffs were not aware of (and were not able to review) the Martons' Reply until June 8, 2006, Plaintiffs did not know "well before the policy at issue went into effect, that Mr. Marton had lost the opportunity to bring a claim against the contractor and he blamed the Citak firm for that situation." See Def. Memo of Law p8.

Under the DDC auspices, the Martons and Plaintiffs agreed to mediate their dispute and met on June 8, 2006 to discuss the DDC matter. See Exhibit "I" - Amended Complaint ¶¶19, 20. At that June 8th mediation, the DDC Mediator, after hearing the parties, advised them that it did not appear that there had been any violation of any Disciplinary Rules arising from what had transpired between Plaintiffs and the Martons and further informed the parties that he could not and would not render any opinion as to whether the Martons had other remedies against Plaintiffs, including an action for legal malpractice. See Exhibit "I" - Amended Complaint at ¶20(A), (B). It was at this mediation that Plaintiffs were first made aware of, and were given a courtesy copy of the Martons' Reply. Prior to the June 8th DDC mediation, there had been no mention, orally or in writing, of any claim of legal malpractice raised against Plaintiffs by the Martons. No complaint, law suit or proceeding of any kind had been commenced against Plaintiffs, nor had Plaintiffs received any other communication, oral or written, concerning any potential claim that the Martons might assert against Plaintiffs for legal malpractice. See Exhibit "I" - Amended Complaint ¶¶20(C), 21 and 22(B).

Within one (1) week after Plaintiffs had become cognizant the Martons' false beliefs as contained in their Reply, Plaintiffs notified Defendant. On June 15, 2006, Plaintiffs notified JLT Services Corp. (hereinafter "JLT"), the "Producer" of Defendant's insurance policy, in writing of the Martons' claims and requested that JLT take "whatever steps necessary" to notify Defendant of that potential claim. See Exhibit "I" - Amended Complaint ¶23 (specifically Exhibit 3 annexed thereto). Defendant acknowledged receipt of that notice on June 15, 2006. See Exhibit "I" - Amended Complaint ¶24 (specifically Exhibit 4 annexed thereto).

It is now readily apparent that the Martons did not lose any opportunity to bring their claim against Hogan. They re-filed for arbitration in September 2006 and in May 2007 received

8

an arbitration award in their favor against Hogan in the sum of $62,367.32. See Exhibit "I" - Amended Complaint ¶34 (specifically Exhibit 9 annexed thereto). That arbitration award was converted into a Supreme Court judgment shortly thereafter, in the total sum of $64,158.08 in their favor against Hogan, which included interest, costs and disbursements,. See Exhibit "I" - Amended Complaint ¶35 (specifically Exhibit 10 annexed thereto).

On November 3, 2006 the Martons filed a Summons and Complaint in Supreme Court, New York County, under Index No. 116472-06 (hereinafter the "Martons' Legal Malpractice Action"). See Exhibit "I" - Amended Complaint ¶26(A). In February 2007, Plaintiffs and the Martons were notified that no further action would be taken by the DDC regarding the Martons' DDC Statement and that the matter would be closed. Thereafter, the Martons' Legal Malpractice Action was first served upon Plaintiffs. See Exhibit "I" - Amended Complaint ¶28. Plaintiffs immediately forwarded the Martons' Legal Malpractice Action to Defendant, who again disclaimed coverage. See Exhibit "I" - Amended Complaint at ¶¶29-30 (specifically Exhibits 7 and 8 annexed thereto).

As the Martons had repeatedly been informed since the commencement of an action against Hogan in 2002, at no time did Hogan have sufficient assets from which the judgment now obtained by the Martons could have been satisfied. Moreover, there is no proof submitted by Defendant that the Martons even attempted to collect and/or enforce their judgment against Hogan, much less exhausted all such efforts. It cannot be claimed that the Martons have been harmed in any way. See Exhibit "I" - Amended Complaint ¶¶36, 37.

## JUSTICE REQUIRES THAT PLAINTIFFS BE PERMITTED TO AMEND THEIR COMPLAINT PURSUANT TO FRCP 15(a)(2)

Under FED.R.CIV.P 15(a)(2), a "court should freely give leave [to amend a complaint] when justice so requires." *Cevasco v. Nat'l R.R. Passenger Corp.*, 2007 WL 4440922 at * 3

(S.D.N.Y. 2007). This standard is liberally construed by the courts. *See, e.g., Bellen v. Weiser*, 2007 WL 2979827 at *8 (S.D.N.Y. 2007). An amendment is permitted where it would not be futile nor prejudice the opposing party and where it is not asserted in bad faith or will cause undue delay. *Cevasco v. Nat'l R.R. Passenger Corp., supra,* 2007 WL 4440922 at *2.

The proposed amendment to a single paragraph of Plaintiffs' Amended Complaint would not be futile. Based upon documentary evidence, Plaintiffs seek to amend their complaint to reflect that the date on which they received the Martons' DDC Statement, specifically January 27, 2006, rather than the amorphously stated "in or about December 2005" as is presently pled. *Compare* Exhibit "I" – Amended Complaint ¶10 *with* Exhibit "II" - Proposed Second Amended Complaint ¶10. This amendment allows Plaintiffs to refute categorically, based on sworn statements and documentary evidence, Defendant's unfounded claim that the Plaintiffs were aware of a pending disciplinary action on January 20, 2006 when their application for insurance coverage was completed. This confirms that there were no misrepresentations made in that application for insurance from Defendant. *Cf. Bellen v. Weiser, supra*, 2007 WL 2979827 at *8 (permitting amendment to allow plaintiff to state claim).

Plaintiffs' proposed amendment does not prejudice Defendant; rather it is integral to "sharpen the pleadings to conform to the evidence." *Bridgeport Music Inc. v. UMG Recordings, Inc.*, 2008 WL 113672 at * 7 (S.D.N.Y. 2008). Plaintiffs do not seek this amendment to "reiterate and embroider" claims. *Id. at* 2008 WL 113672 at * 7 (citing *Scottish Air Int'l v. British Caledonian Group, PLC*, 152 F.R.D. 18, 30 (S.D.N.Y. 1993)(quoting *Coleman v. Ramada Hotel Operating Co.*, 933 F.2d 470, 473 (7th Cir. 1991)). Moreover, a party is permitted to amend its pleadings where the amendment would not "(i) require the opponent to expend significant resources to conduct discovery and prepare for trial" or "(ii) significantly delay the

resolution of the dispute." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993).

Defendant will not be forced to "expend significant resources" to determine the veracity of

Plaintiffs' claim of the date on which they received the Martons' DDC Statement, since any

investigation can be undertaken through routine discovery tactics (none of which has occurred).

Nor will permitting this amendment delay the resolution of the dispute, since Plaintiffs' cross-

motion to amend is being submitted very early in the procedural life of this action (in response to

Defendant's pre-answer motion to dismiss) and immediately following the discovery of new

information upon which the amendment is based. The January 27, 2006 letter was retrieved from

the DDC files only days prior to bringing the instant cross-motion. Therefore, there will be no

prejudice to Defendant by permitting the proposed amendment to paragraph 10 of Plaintiffs'

Amended Complaint. *Harper v. Port Authority of New York & New Jersey*, 2006 WL 1519985

(S.D.N.Y. 2006).

Finally, there is no bad faith herein. Plaintiffs are simply attempting to conform the

pleadings to documentary evidence, thereby clarifying the existing pleading. The subject

document would likely have been discovered and clearly supports the facts upon which any

ultimate decision herein would have been based.

For all of the foregoing reasons, Plaintiffs' cross-motion to amend one paragraph of their

Amended Complaint (¶10) and add one additional document (Exhibit 2A to the Proposed Second

Amended Complaint), to clarify a crucial date should be granted.

## STANDARD OF REVIEW

When evaluating a "motion to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6) for failure to state a claim upon which relief can be granted, the court must accept the

factual allegations of the non-moving party as true and draw all reasonable inferences in its

11

favor." *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 2008 WL 219765 (S.D.N.Y. 2008) (citing *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996)).

Indeed, "a motion to dismiss must be denied if the complaint alleges 'enough facts to state a claim for relief that is plausible on its face.'" *In re 1ˢᵗ Rochdale Co-op Group, Ltd.*, 2008 WL 170410 (S.D.N.Y. 2008) (quoting *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007)(quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007)). Similarly, the Court's function on a motion to dismiss "is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

## ARGUMENT

### POINT I

### THERE WAS NO MISREPRESENTATION IN PLAINTIFFS' APPLICATION FOR INSURANCE COVERAGE BY DEFENDANT CONCERNING  A PENDING DISCIPLINARY COMPLAINT

There is no merit at all to Defendant's contention that Plaintiffs "knew" that they were the subject of a disciplinary complaint when they filed their application for insurance coverage on January 20, 2006.  That contention is refuted by documentary evidence and the sworn Declarations of Burton Citak and Donald L. Citak. Although the Martons' DDC Statement is dated December 21, 2005, and stamped received by the DDC on December 23, 2005, Plaintiffs did not receive notice or a copy of the Martons' DDC Statement until January 27, 2006. See Exhibit "II" – Proposed Amended Complaint ¶10 (specifically Exhibit 2A annexed thereto). The insurance application sent by Plaintiffs to Defendants is dated January 20, 2006. See Exhibit "I" - Amended Complaint (specifically Exhibit 1 annexed thereto). Therefore, Plaintiffs' response

therein was truthful and cannot in any way serve as grounds for Defendant to disclaim coverage there under.

Furthermore, it is undisputed that Defendant never rescinded the insurance policy it issued to Plaintiffs, which would have required Defendant to return to Plaintiffs all premiums paid there under and would have notified Plaintiffs about a potential lapse in coverage. See *Chicago Ins. Co. V. Kreitzer & Vogelman,* 2000 WL 16949 (S.D.N.Y. 2000). Moreover, in the following year (2007), Defendant even renewed Plaintiffs' policy of insurance for the next year. See Exhibit "III" to DCitak Declaration. Clearly, even Defendant itself did not place much import on any alleged "inaccuracy" in Plaintiffs' application. As such, Defendant should not be permitted to disclaim coverage now, as a result thereof.

## POINT II

### PLAINTIFFS HAD NO REASONABLE BASIS TO FORESEE A MALPRACTICE CLAIM BY THE MARTONS BASED ON THEIR DDC STATEMENT

### A.    A Disciplinary Complaint Itself and Without Regard to Its Content Is Not Reasonable Notice of a Potential Malpractice Claim

Defendant fails to provide the Court with a single case to support the misplaced proposition that Defendant would have this Court adopt: that a complaint to a disciplinary committee, in and of itself and without regard to its content, is sufficient to give an attorney reasonable notice of a potential malpractice claim or suit. Indeed, the mere filing of a disciplinary complaint is not tantamount to notice of circumstances that may give rise to a potential malpractice claim, particularly where the relief sought in that disciplinary complaint seeks only to compel the attorney to continue representing the client. See *Phillips v. Transamerica Ins. Co.*, 107 Misc.2d 162, 433 NYS2d 555, 559 (Supreme Ct. Suffolk Co. 1980).

A disciplinary complaint does by itself form the basis for a malpractice claim. *See, e.g., Sullivan & Cromwell LLP v. Charney*, 15 Misc.3d 1128(A) at *5, 841 N.Y.S.2d 222 (Supreme Ct. N.Y. Cty. 2007).

A complaint to a DDC may be filed for a host of reasons, such as improper negotiations with a layman, excessive fees, misrepresenting a specialization, holding oneself out as engaging in dual practice, improper sharing of fees, conflict of interest, or misrepresenting admission to practice in another state. Indeed, the pamphlet published by the DDC has an entire section as to what the DDC "cannot do". Exhibit "XII" to DCitak Declaration, It cannot be fairly stated that merely because a statement is sent to a DDC that, in and of itself, triggers reasonable notice to that attorney about whom the statement refers, that a legal malpractice suit or claim may ensue. This is especially true, where, as in the case at bar, the Martons' DDC Statement does not allege any negligent action by Plaintiffs, does not accuse Plaintiffs of causing them a pecuniary loss or other damages, and in fact seeks to have the DDC compel Plaintiffs to resume representing the Martons (the complaining party).

In *Phillips v. Transamerica Ins. Co, supra*, 107 Misc. 2d at 162, the complaint to the Grievance Committee specifically emphasized the prospect of a lawsuit based on counsel's failure to meet the applicable Statute of Limitations. That situation is unquestionably different from the Martons' DDC Statement, which did not indicate that a lawsuit was forthcoming or that a statute of limitation had been missed or that any other fatal error had been committed or even that any losses or damages had been incurred. In stark contrast, the Martons' DDC Statement sought to have Plaintiff Donald Citak be compelled to continue to represent the Martons: "I appreciate your efforts to understand why Mr. Citak ignores me and has not returned to court to represent me. Thank you."! See Exhibit I - Amended Complaint (specifically Exhibit 2 annexed

thereto). The Martons' DDC Statement simply contains "demands for future performance." *See Evanston Ins. Comp. v. GAB Business Services,* 132 A.D.2d 180, 185, 521 N.Y.S.2d 692 (1st Dep't 1987).

Moreover, Plaintiffs had maintained a strong personal and professional relationship with the Martons and many of their cousins, a number of whom they had represented in various personal legal matters; in addition to which Plaintiffs also represented corporate entities owned by those persons, including some entities in which the Martons themselves had an interest. In such circumstances, a reasonable attorney could not and would not foresee a malpractice suit seeking damages. *Cade & Saunders, P.C. v. Chicago Ins. Co.*, 332 F.Supp.2d 490, 498, 501 (N.D.N.Y.2004) (considering close familial relationship between attorneys and clients in determining reasonable notice of malpractice claim).

In fact, in November and December 2003, the Martons' cancelled their appointment to meet with Plaintiffs, failed to pay the fees required to commence the arbitration proceeding, failed to re-schedule the cancelled appointment, and failed to communicate with Plaintiffs, all of which caused Plaintiffs to believe that the Martons had abandoned their claim at that time. Plaintiffs had urged the Martons to pay the requisite fees needed to commence arbitration against Hogan. Exhibit "IX" to DCitak Declaration. The Martons were fully capable, intellectually and financially, of re-initiating their claim against Hogan. For reasons know only to the Martons, they chose not to do so until September 2006, when the Martons re-filed arbitration proceeding against Hogan. That ultimately resulted in an award in their favor against Hogan (which award was subsequently converted into a Supreme Court judgment. See Exhibit "I" – Amended Complaint (specifically Exhibits 9 and 10 annexed thereto). Thus, the Martons in fact obtained

the very relief that they could have obtained, had they elected to pay the fees to so, which Plaintiffs had requested from them in 2003.

Therefore, as a result of the foregoing, when Plaintiff Donald Citak received notice of the Martons' DDC Statement on January 27, 2006, after the Plaintiffs' application for insurance had been sent to Defendant, they had no reason to believe that document was a precursor to a malpractice claim particularly since even a violation of a Disciplinary Rule is not necessarily determinative as a matter of law on the viability of a malpractice suit.

**B.    Defendant's Cases Are Inapposite Because They All Involve Fatal and Irreversible Errors Made by Attorneys**

The cases cited in Defendant's Memorandum of Law are inapposite. They simply hold that an attorney-insured should reasonably expect a future malpractice suit if an error is made that is so egregious that it prejudices a client's legal rights and remedies against another person or entity. In the case at bar, no such prejudice was inflicted upon the Martons as a result of Plaintiffs' purported actions. To the contrary, when the Martons ceased communicating with Plaintiffs in late 2003, and throughout the DDC process they initiated in December 2005, the Martons were not barred from filing an arbitration proceeding against Hogan with the AAA. After sitting on their rights for almost three (3) years, the Martons finally elected to arbitrate against Hogan in September 2006. They thereafter received a favorable arbitration award, which was converted thereafter into a judgment against Hogan. See Exhibit "I" – Amended Complaint (specifically Exhibits 9 and 10 annexed thereto). Since Hogan's potential inability to satisfy a judgment was known to the Martons since 2002 (due to its lack of assets, lack of insurance coverage and ability to cease business operations under that corporate name) and since there is no proof that the Martons have even attempted to collect and/or enforce their judgment against

16

Hogan (much less exhausted all such efforts), the Martons have suffered no damages at the hands of Plaintiffs.

Defendant is misguided in relying on *Sirignano v. Chicago Ins. Co.*, 192 F.Supp.2d 199 (S.D.N.Y. 2002) , in which the Court focused on the issue of late and improper notice while a policy was in effect, not notice of a potential claim prior to the inception of the policy. The circumstances are drastically different and that case is easily distinguishable from the case at bar. *Sirignano* involved a case where a client's medical malpractice case was marked off the calendar because the attorney failed to provide his adversary with expert witness reports prior to the trial. *Id.* at 201. The attorney failed to restore the case to the calendar within the one (1) year as permitted by statute and thus the client's case was dismissed as abandoned. *Id.* at 204. The court held that the dismissal was sufficient to put a reasonable attorney on notice of a potential claim. Subsequently, the attorney's motion to vacate the dismissal and the attorney's appeal thereof were denied. *Id.* at 201. Only at that point in time did the attorney notify his insurance carrier of a potential claim. *Id.*

Most importantly, in *Sirignano* the attorney conduct cost his client all opportunity to pursue the underlying medical malpractice claim against the doctor since the case was dismissed with prejudice. Here, the Martons were not denied the opportunity to bring their claim against Hogan. Despite Defendant's erroneous insinuations, neither the Supreme Court's dismissal of the Martons' case, not the failure to file for arbitration in 2003 following their failure to pay the requisite fees, cause the Martons to lose the right to arbitrate their claim against Hogan. After waiting for almost three (3) years, the Martons commenced that arbitration proceeding in 2006 and received an award in their favor. That arbitration award was then converted into a judgment. Since there has been no change in Hogan's financial wherewithal since the commencement of

17

the judicial action by the Martons against Hogan, the Martons are now in the same position as they would have been, had they elected to move forward with Plaintiffs as their counsel in 2003.

The Court in *Sirignano* noted that the attorney "had done nothing to restore the case to the calendar within the 1-year period" permitted by statute. *Id.* at 204. Plaintiffs had attempted proceed with the Martons' action against Hogan. Following the dismissal of the NYS Supreme Court action, they communicated with the AAA, secured the requisite forms, requested that the Martons remit the necessary filing fees, scheduled a meeting with the Martons to discuss the matter further, which the latter cancelled and never re-scheduled. Unlike in *Sirignano*, where the court found the attorney had committed "a series of errors", *Id.,* it was the Martons' actions that prevented the filing of an arbitration proceeding by Plaintiffs. Unlike the counsel in *Sirignano*, Plaintiffs could not have reasonably foreseen any potential claim by the Martons since the Martons did not lose their opportunity to proceed with arbitration against Hogan.

*Ingalsabe v. Chicago Ins. Co.*, 270 A.D.2d 684, 704 N.Y.S.2d 697 (2d Dep't 2000) and *Bellafonte Ins. Co. v. Eli D. Albert, P.C.*, 99 A.D.2d 947, 472 N.Y.S.2d 635 (1st Dep't 1984) are also equally distinguishable from the case at bar. Both cases hold that an attorney-insured should reasonably expect a potential malpractice claim where that attorney misses the applicable Statute of Limitations. The missing of a Statute of Limitations constitutes an irreversible and fatal error to a client's case, where the client's action is lost forever against a particular defendant. A reasonable attorney should be aware that an error of such magnitude is likely to lead to a malpractice claim by the aggrieved client. But in the case at bar, the Martons' rights against Hogan were not lost, altered or adversely affected. There were no allegations of harm, damages or pecuniary loss by the Martons in the Martons' DDC Statement; there were no allegations of negligent conduct by the Martons in the Martons DDC Statement. Therefore there is no basis in

fact for Defendant to claim (Def. Memo of Law p11) that "the Citak firm knew in December 2005 that Mr. Marton was claiming that he had been harmed by the Citak's firm's failure to do all of these things", since no such claim is contained in the Martons' DDC Statement! Defendant does not quote a single phrase from in the Martons' DDC Statement, referring to any allegation of negligence or harm or any kind. Defendant's inability to do so is not surprising in that no such allegations exist therein!

Courts do not compel an attorney to reasonably expect that a claim will be made, unless there is an undeniable breach of professional responsibility or knowledge of the intent of a client to make a malpractice claim. Court do not and cannot expect attorneys to be mind readers. The fact that there was a disciplinary complaint involved herein does not change the criteria for reasonable notice. *Cf. Fogelson v. Home Ins. Co.*, 129 A.D.2d 508, 514 N.Y.S.2d 346 (1st Dep't 1987) (court focused on the client's statement to attorney-insured that outside attorney advised of potential malpractice suit); *Purcigliotti v. Risk Enter. Mgmt Ltd.*, 240 A.D.2d 205, 658 N.Y.S.2d 296 (1st Dep't 1997) (RICO suit commenced against attorneys-insured and former clients for filing fraudulent workers compensation claims did not give attorneys reasonable notice of malpractice suit by former clients).

Where there is clear professional negligence, such missing a Statute of Limitations or failing to restore the case timely to the calendar, in which cases the client is irrevocably harmed and damaged because of the loss of rights to proceed, an attorney is on notice to notify his malpractice carrier. Similarly, in a case like *Phillips v. Transamerica Ins. Co*, _supra_, where a client expresses his intention to sue, it is clear that a malpractice claim was impending. In the instant case, since the Martons' Supreme Court was not dismissed with prejudice and in the Martons' DDC Statement there were no allegations of negligence nor any allegations of damages

19

or pecuniary losses and since the Martons did not express a desire to sue for malpractice; there was no reasonable basis for any attorney to believe, based on that DDC Statement that a malpractice claim would be asserted. The Martons' DDC Statement in fact seeks to have Plaintiffs continue to represent them in arbitration against Hogan. As soon as Plaintiffs learned that the Martons blamed them for an alleged (and unfounded) loss of remedy against Hogan, Plaintiffs contacted JLT. See Exhibit "I" – Amended Complaint (specifically Exhibit 3 annexed thereto).

The only other case cited by Defendant in its Memo of Law is *Sparacino v. Pawtucket Mut. Ins. Co.*, 50 F.3d 141 (2d Cir. 1995), which is completely irrelevant to the case at bar., since that case deals with timely notice of a personal injury action.

As indicated, the cases cited in Defendant's Memorandum of Law are all inapposite. Unlike the clients of the attorneys in Defendant's cases, the Martons were not deprived of their opportunity to pursue legal action against Hogan (and they have pursued that remedy and have a judgment against Hogan). When Plaintiffs learned that the Martons were claiming such a loss (however erroneously) on June 8, 2006, upon being given a courtesy copy of the Martons' Reply and the specter of a malpractice claim was mentioned by the mediator, they notified Defendant without delay (within one week!). Since no reasonable attorney could have known or foreseen the possibility of a claim by the Martons against Plaintiffs under the circumstances herein until June 8, 2006, the notice given by Plaintiffs thereafter was proper and timely. Defendant does not have a basis for denying coverage to Plaintiffs due to any purported late notice.

## C.     The Martons' DDC Statement Did Not Provide a "Reasonable Basis to Foresee a Claim"

Under a "claims-made" policy, such as one between the parties herein Exhibit "I" – Amended Complaint (specifically Exhibit 1 annexed thereto), the actual report, specifically the

"making of the claim which is the event and peril being insured." *See Ins. Corp. Of America v. Dillon, Hardamon & Cohen*, 725 F. Supp. 1461, 1469 (N.D.Ind. 1988) (quoting Kroll, THE PROFESSIONAL LIABILITY POLICY "CLAIMS MADE", 13 Forum 842, 843 (1978)). Thus, the policy's own definition of what constitutes a "claim" or "suit" is instructive, because the facts and circumstances must be compared to the parties' understanding of the terms of that policy.

The definition of "claim" under Definition B of the subject insurance policy is: "a demand received by an insured for money alleging an error, omission or negligent act in the rendering of or failure to render 'professional legal services' for other by you or on your behalf." See Exhibit "I" – Amended Complaint (specifically Exhibit 1 annexed thereto). The definition of "suit" under Definition L is: "a civil proceeding in which 'damages' to which this insurance applies are alleged. 'Suit' includes: 1. An arbitration proceeding in which damages are alleged . . . [or] [a]ny other alternative dispute resolution proceeding in which damages are claimed.'" See Exhibit "I" – Amended Complaint (specifically Exhibit 1 annexed thereto).

It is readily apparent that, under the definitions of the insurance policy issued by Defendant, the Martons' DDC Statement did not constitute a "claim" or "suit." Initially, the Martons' DDC Statement was not "a demand . . . for money alleging an error, omission or negligent act," nor was it a "civil proceeding" alleging "damages". Only when Plaintiffs received a copy of the Martons' Reply at the June 8, 2006 mediation, can it be said that they received notification that a "claim" potentially would be asserted (a demand alleging an error). No actual lawsuit was filed by the Martons until November 2006 and the pleadings therein were not served until February 2007.

Defendant erroneously contends that the accusations in the Martons' DDC Statement "are virtually identical to those contained" in the Martons' Malpractice Action. Defendant further

21

misrepresents that "the Citak firm knew in December 2005 that Mr. Marton was claiming that he had been harmed by the Citak firm's" alleged actions and inactions. See Def's Memo of Law p11. Defendant's assertions mischaracterize the law and erroneously characterize the Martons' DDC Statement. The Martons do not express a future intent to sue Plaintiffs for damages. There is no nastiness, no allegations of negligent conduct, no damages, no pecuniary losses, no request for remuneration, no request to terminate the relationship and no demand compensation or damages from Plaintiffs. Indeed, the Martons' DDC Statement lacks any such reference to how Plaintiffs proximately caused their loss or damages, which constitute essential elements of any malpractice "claim", as well as an indispensable part of a "claim" or "suit" under the subject insurance policy. *See, e.g., Reibman v. Senie*, 302 A.D.2d 290, 290, 756 N.Y.S.2d 164, 164 (1st Dep't 2003)("to state a cause of action for malpractice, the complaint must set forth three elements: the negligence of the attorney; that the negligence was the proximate cause of the loss sustained; and proof of actual damages."). In fact, by that statement, the Martons expressly seek to compel Plaintiffs to be forced to work his attorneys in the future: ("I appreciate your efforts to understand why Mr. Citak ignores me and has not returned to court to represent me)" Exhibit "I" – Amended Complaint (specifically Exhibit 2 annexed thereto).

Since under New York law, the Martons do not include the requisite elements of a claim in their DDC Statement, it would be impossible for Plaintiffs, or any reasonable attorney to know or reasonably foresee that a potential claim or suit for malpractice may be forthcoming.

## CONCLUSION

For the reasons stated above, this Court should

a) grant Plaintiffs' motion to amend their Amended Complaint, accept the Proposed Second Amended Complaint and the exhibits annexed thereto as Plaintiffs' pleading herein, and deem Defendant to have been served with same as of the date of the Court's decision; and

b) deny Defendant's motion to dismiss, not only because there no misrepresentation by Plaintiffs in submitting their application to Defendant on January 20, 2007, since they did not receive the Martons' DDC Statement until January 27, 2006, but also because neither Plaintiffs nor any reasonable attorney should have known or reasonably foreseen that a potential claim or suit for malpractice would be asserted based upon that document; and

c) grant such other and further relief as may be proper under the circumstances, including but not limited to issuing judgment in Plaintiffs' favor, compelling Defendant to recognize its obligations of defense and indemnity under the subject insurance policy issued to Plaintiffs and act accordingly.

Dated: New York, NY
February 28, 2008

LAW OFFICE OF PETER WESSEL, PLLC

By: _____

PETER WESSEL (PW  4164)
Attorney for Plaintiffs
CITAK & CITAK, DONALD L. CITAK
and BURTON CITAK
270 Madison Avenue, Suite 1203
New York, NY 10016
(212) 532-9700
(212) 202-7522 (fax)