UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
CITAK & CITAK, DONALD CITAK and
BURTON CITAK,

       Plaintiffs,     Civil Action No.:
               07 CIV 5459 (WHP)

    -against-


THE ST. PAUL TRAVELERS COMPANIES,
INC. a/k/a ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,


       Defendant.
-----------------------------------------------------------------


## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
## OF DEFENDANTS' MOTION TO DISMISS COMPLAINT


Of Counsel:
Lisa L. Shrewsberry     TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP
Jonathan R. Harwood     Attorneys for Defendants
            Mid-Westchester Executive Park
            Seven Skyline Drive
            Hawthorne, New York 10532
            (914) 347-2600

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ........................................... 1

II.  STATEMENT OF FACTS ............................................... 1

III. ARGUMENT .......................................................... 2

    I.   PLAINTIFFS' CROSS-MOTION TO AMEND
        THE COMPLAINT SHOULD BE DENIED ............................ 2

    II.  PLAINTIFFS HAD A REASONABLE BASIS TO
        BELIEVE THAT CONDUCT PRIOR TO THE
        POLICY PERIOD MIGHT LEAD TO A CLAIM ........................ 2

IV.  CONCLUSION ........................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Bellefonte Insurance Co. v. Eli D. Albert, P.C.*,
    99 A.D.2d 947, 472 N.Y.S.2d 635 (1st Dep't 1984) .................................. 10

*Brander v. Nabors*,
    443 F.Supp. 764 (N.D. Miss (1978) aff'd 579 F.2d 888 (5th Cir. 1978) .................. 11

*Cade & Saunders v. Chicago Ins. Co.*,
    332 F.Supp.2d 490 (N.D.N.Y. 2004) .................................................. 8

*Fogelson v. Home Ins. Co.*,
    129 A.D.2d 508, 514 N.Y.S.2d 346 (1st Dep't 1987) ............................. 10, 11

*Ingalsbe v. Chicago Insurance Co.*,
    270 A.D.2d 684, 704 N.Y.S.2d 697 (3d Dep't 2000) ................................... 10

*Phillips v. Transamerica Ins. Co.*,
    107 Misc.2d 162, 433 N.Y.S.2d 555 (S.Ct. 1980) ..................................... 6

*Purcigliotti v. Risk Enterprises Management Ltd.*,
    240 A.D.2d 205, 658 N.Y.S.2d 296 (1st Dep't 1997) .................................. 10

*Sirignano v. Chicago Insurance Co.*,
    192 F.Supp.2d 199 (S.D.N.Y. 2002) .................................................. 10

**Statutes**

Rule 12(b)(6) of the Federal Rules of Civil Procedure ............................. 1, 11

## PRELIMINARY STATEMENT

This reply memorandum of law is submitted on behalf of defendant The St. Paul Travelers Companies, Inc. a/k/a St. Paul Fire and Marine Insurance Company (referred to hereinafter as "St. Paul" or "defendant") in further support of its motion to dismiss the complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In this matter, plaintiffs seek a declaratory judgment as to coverage for a legal malpractice suit under a Lawyers Professional Liability Policy issued by St. Paul. St. Paul denied plaintiffs' request for coverage on the grounds that, prior to the inception of the policy the plaintiffs knew or should have reasonably foreseen that their alleged errors, omissions or negligent acts prior to the inception of the policy might lead to a claim during the policy period. As discussed in detail in St. Paul's moving papers, the applicable policy language and the relevant case law supports the denial of coverage and, as a result, the complaint in this action should be dismissed in its entirety.

## STATEMENT OF FACTS

St. Paul respectfully refers the court to its moving papers for a complete recitation of the facts relevant to this matter.

## ARGUMENT

### I.  PLAINTIFFS' CROSS-MOTION TO AMEND THE COMPLAINT SHOULD BE DENIED

Plaintiffs have cross-moved to amend the amended complaint, seeking to modify the allegation concerning the date on which they became aware of the disciplinary complaint filed against them. The original complaint in this matter stated that plaintiffs first learned of the Disciplinary Complaint in December 2005. The same date appears in the amended complaint, filed in January of this year. Plaintiffs also used the December 2006 in submissions to this court. Reply

Declaration of Jonathan Harwood, Ex. A. Plaintiffs now seek to amend the complaint again to state that they did learn of the disciplinary complaint until on or about January 27, 2006. Plaintiffs then seek to use this date to argue that they could not possibly have had reason to believe they would be sued prior to completing their application for insurance on January 20, 2006. This appears to be no more than a desperate attempt to avoid dismissal of the complaint in this matter. Under the circumstances, St. Paul respectfully requests that the court deny the cross-motion to amend the complaint. Even if the court elects to grant the motion, as discussed below, the proposed amendment does not diminish the propriety of granting St. Paul's motion to dismiss.

## II. PLAINTIFFS HAD A REASONABLE BASIS TO BELIEVE THAT CONDUCT PRIOR TO THE POLICY PERIOD MIGHT LEAD TO A CLAIM

Plaintiffs' opposition to the motion to dismiss is based on several erroneous assumptions and a complete misunderstanding of the policy, the application and the relevant case law. As set forth in St. Paul's moving papers, the policy at issue contains an exclusion that precludes coverage for:

> 'claims' arising out of any error, omission, negligent act or 'personal injury' occurring prior to the inception date of the Policy if any insured prior to the inception date knew or could have reasonably foreseen that such error, omission, negligent act or 'personal injury' might be expected to be the basis of a 'claim' or 'suit.'

Harwood Dec., Ex. A., Exclusion G.[1] In moving to dismiss the complaint, St. Paul pointed out the numerous events prior to the inception of the policy that should have lead the plaintiffs to reasonably foresee that the Martons might bring a claim against them. This included the fact that: plaintiffs improperly commenced an action in state court on behalf of the Martons when the governing contract

---

[1] Exhibit A to the Harwood Declaration is plaintiffs' complaint in this action. The St. Paul policy is annexed as Exhibit A to that complaint.

2

required arbitration; plaintiffs failed to comply with the contract term that required a request to mediate before any arbitration was commenced; and plaintiffs failed to properly commence an arbitration proceeding after the state court action was dismissed. In addition, in December 2005 the Martons filed a disciplinary complaint against the plaintiffs in which they complained about each of the alleged failings on the part of the plaintiffs that make up the claims in the malpractice action.

In opposing the motion to dismiss, plaintiffs spend considerable time explaining why the policy application did not disclose the disciplinary complaint. According to plaintiffs, they did not receive the disciplinary complaint in December 2005, as originally alleged, but on or about January 27, 2006. In support of this, plaintiffs identify a January 27, 2006 letter they wrote to the Departmental Disciplinary Committee (DDC) seeking an extension of time to respond to the complaint. According to Donald Citak's Declaration, having now reviewed this letter he specifically recalls that the disciplinary complaint itself was only received shortly before January 27, 2006.[2] Plaintiffs then go on to argue that this confirms that they were not aware of the disciplinary complaint before completing the policy application on January 20, 2006. As such, according to plaintiffs, they had no reason to believe, at the time the application was completed, that the Martons might bring an action against them. This argument is based on a complete failure to comprehend the language of the policy and the application.

As quoted above, the applicable exclusion in the policy states that coverage will not apply to any claims arising out of errors or omissions that occur prior to the **"inception date of the policy"**

---

[2] It is worth noting that the January 27, 2006 letter states that the disciplinary complaint was received annexed to a January 6, 2006 letter from the DDC. For the letter to be received by plaintiffs on or about January 27, 2006, it would have had to take almost three weeks to travel from the DDC's offices at 61 Broadway, New York, New York to plaintiffs' offices at 270 Madison Avenue, New York, New York.

if any insured **"prior to the inception date"** knew or could have reasonably foreseen that such error or omission might be expected to be the basis of a claim or suit. Harwood Decl. Ex. A (Emphasis added) It is clear, from a review of this language, that it refers to the insureds' knowledge prior to the inception of the policy, not the completion of the application. Plaintiffs' opposition to the motion to dismiss unequivocally confirms that they were aware of the disciplinary complaint by January 27, 2006, at the latest. The policy went into affect on April 20, 2008, almost three full months later.

Plaintiffs also refer to this alleged time line in order to explain their failure to disclose the disciplinary complaint on the policy application. This, however, is wholly irrelevant. St. Paul denied coverage for this matter based on the above-quoted policy exclusion. That language refers solely to the insureds' knowledge at the effective date of the policy, not when the application was completed. Plaintiffs' argument would be no more availing, however, if the operative date of the application. The application contains the following agreement of the insured, immediately above the signature line:

> If the information supplied in this application changes between the date of the application and the effective date of any insurance policy issued by St. Paul Travelers in response to this application, you will immediately notify us of such changes, and we may withdraw or modify any outstanding quotation or agreement to bind coverage.

Harwood Decl., Ex. A. Plaintiffs never advised St. Paul that it had received this disciplinary complaint, despite their contention that it was first received only a week after submitting the application. Accepting plaintiffs' assertions concerning the timing of their receipt of the disciplinary complaint, solely for the purposes of this reply, their arguments would thus still be insufficient to support their claim for coverage.

Plaintiffs also believe it important to mention that the disciplinary complaint only involves

4

the alleged conduct of Donald Citak. This is apparently an attempt to assert that the remaining plaintiffs would be entitled to coverage, even if Donald Citak should have anticipated the possibility of a claim. However, the exclusion clearly states that it does not apply "if **any** insured" had the requisite knowledge prior to the effective date. Harwood Decl., Ex. A. (Emphasis added.) Donald Citak's knowledge, alone, is thus sufficient to preclude coverage for this matter.

Plaintiffs also attempt to expand the coverage of the policy by claiming that the policy's definition of "claim" and "suit" somehow gave them less reason to expect that the Martons would bring a claim against them. According to plaintiffs, the disciplinary complaint did not satisfy the definition of "claim" or "suit" contained in the policy. As a result, they claim, it could not have put them on notice that a claim would be asserted against them. Once again, this argument demonstrates a complete misreading of the policy. The language at issue does not state that an actual claim or suit has to exist prior to the policy period for that matter to be excluded from coverage. Rather, the exclusion applies to claims that are made during the policy period that are based on errors, omissions, negligent acts or personal injuries that occur prior to the inception date of the Policy if, prior to that time, any insured knew or could have reasonably foreseen that those errors, omissions, negligent acts or personal injuries might be expected to be the basis of a "claim" or "suit." Pursuant to this language, the definitions of "claim" or "suit" are only relevant after the inception date of the policy.

Plaintiffs also misstate St. Paul's argument in support of its motion to dismiss. According to plaintiffs, St. Paul has asserted that "a complaint to a disciplinary committee, in and of itself and without regard to its content, is sufficient to give an attorney reasonable notice of a potential malpractice suit." St. Paul stated nothing of the sort. More accurately, St. Paul argued that the

totality of the circumstances here clearly should have made an attorney aware that he could face a claim of malpractice. As set out in detail in St. Paul's moving papers, plaintiffs repeatedly failed to properly commence an action on behalf of the Martons. Plaintiffs were certainly aware of these failings, as they received notice of each dismissal (from the court) and rejection of their efforts to commence such actions (from AAA). Ultimately, the Martons identified all of these events in their complaint to the Disciplinary Committee, which plaintiffs admittedly received months before the Policy went into effect. These undisputed facts were sufficient to put plaintiffs on notice that a claim may be made against them as a result of these actions.

Plaintiffs' reliance on *Phillips v. Transamerica Ins. Co.*, 107 Misc.2d 162, 433 N.Y.S.2d 555 (S.Ct. 1980) does not alter this result. In *Phillips*, like the instant case, plaintiff sought coverage under a lawyer's professional liability policy. As an initial point, the *Phillips* case was decided based on application of notice provisions in the policies at issue and the court's analysis of whether the insured provided notice "as soon as practicable." The issue in the instant case is whether plaintiffs knew, or could have reasonably foreseen, prior to the effective date of the policy, that the handling of the Martons' claims might lead to a claim or suit. Moreover, *Phillips* does not stand for the proposition that a disciplinary complaint is not sufficient to provide an insured with the requisite knowledge of a potential claim. In fact, the court notes that a disciplinary complaint, combined with the other events, emphasized the prospect of a lawsuit. *Phillips*, 107 Misc.2d at 168, 433 N.Y.S.2d at 559. Similarly, in the case at bar, the Martons' complaint to the DDC, in conjunction with plaintiffs' repeated failure to properly commence an action on behalf of the Martons, increased the prospect of a lawsuit. As such, the ensuing action is not covered under the Policy.

Plaintiffs' attempt to discount the import of the Martons' disciplinary complaint completely

misses the mark. As plaintiffs correctly point out, a disciplinary complaint can be filed for a variety of reasons, some of which do not involve allegedly negligent representation. The fact remains, however, that the Martons' complaint does involve allegedly negligent representation. In fact, contrary to plaintiffs' assertions, the critical allegations in the Disciplinary Complaint are virtually identical to those in the malpractice complaint. In the Disciplinary Complaint, for example, the Martons state that "Don Citak, Esq. filed a lawsuit, which was dismissed because the court said the case had to be arbitrated." Harwood Decl., Ex. C. Similarly, in the complaint in the malpractice action, the Martons allege that the Citak firm commenced an action in the Supreme Court of the State of New York, without first submitting it to mediation or arbitration and the case was dismissed because of the failure to mediate or arbitrate. Harwood Decl., Ex. B at ¶¶18 and 22. The Martons' complaint to the Disciplinary Committee also alleges that "Mr. Citak filed for arbitration but, apparently, the AAA did not take the case . . ." Harwood Decl., Ex. C. Again, the complaint in the malpractice action alleges that the Citak firm submitted the case to AAA for arbitration but that AAA ultimately closed its case file because the filing requirements had not been satisfied. Harwood Decl., Ex. B at ¶23-29. Both proceedings, therefore, clearly involved the Martons' claim that the plaintiffs herein failed to properly prosecute their claims.

Furthermore, plaintiffs' claim that the disciplinary complaint could not have put them on notice of the likelihood of a claim because the Martons sought to have the DDC compel them to continue their representation of the Martons is simply preposterous. In support of this argument, plaintiffs point to the statement in the disciplinary complaint that "I appreciate your efforts to understand why Mr. Citak ignores me and has not returned to court to represent me." This is hardly a request that the Citak firm be directed to continue representing the Martons. More accurately, the

7

Martons are complaining about the Citak firm's failure to properly commence an action or arbitration, or engage in other promised activity. Contrary to plaintiffs' assertions, this is not a "demand for future performance," it is a list of alleged failures by the Citak firm.

According to plaintiffs, their ability to foresee a claim was also affected by their "strong personal and professional relationship with the Martons and many of their cousins." Plaintiffs claim that the fact that they represented cousins of the Martons, and the companies those people owned, suggests that a reasonable attorney would not believe that the Martons would file a claim against them. Plaintiffs' mistakenly rely reliance on *Cade & Saunders v. Chicago Ins. Co.*, 332 F.Supp.2d 490 (N.D.N.Y. 2004) to support this assertion. In *Cade & Saunders*, the party that brought the malpractice action was an actual relative of the attorney, not one of his clients. Moreover, in the instant case, the Martons were able to look past their allegedly close, personal and professional relationship with plaintiffs to file a disciplinary complaint against them. This is arguably more serious than the filing of a lawsuit, as disciplinary charges can result in professional sanctions against an attorney that could dramatically affect his livelihood and professional standing. Certainly, once the Martons saw their way clear to file such a complaint against the Citak firm, it was easily conceivable to a reasonable attorney that they would also be willing to file a civil action.

Plaintiffs also argue, repeatedly, that they could not have objectively foreseen that a claim might be made against them because the Martons still had viable claims against their contractor. The validity of a claim, however, has no bearing on the application of the terms, conditions and exclusions of an insurance policy. Instead, the insurer simply looks to see whether the claim asserted fits within the coverage provided, taking all terms, exclusions and conditions into consideration. In the instant case, application of exclusion G confirmed that no such coverage existed because all of

the relevant facts would have lead a reasonable insured to expect that a claim might be made against it. The relative merits of the Martons' claims have no bearing on this analysis. While these arguments may be relevant to the defense of the legal malpractice claims, they have no bearing on the coverage determination.

Even if it was relevant, in general, the facts of this case would not benefit plaintiffs. According to plaintiffs, the fact that the Martons were able to obtain a default award in arbitration shows that the malpractice claim was not foreseeable. The Martons, however, did not commence the arbitration until September 2006 and the default award was not issued until May 2007. This fact, therefore, could not have affected the plaintiff's objective belief, prior to April 20, 2006, that a claim might be made against them. Moreover, plaintiffs' claims that the Martons were not damaged by their conduct because they obtained a default judgment against the contractor, and that the Martons have not even alleged any damages, is a gross mischaracterization of the facts. In denying the Citak firm's motion to dismiss the complaint in the malpractice action, the court specifically stated that "plaintiffs claim that, but for defendants' negligence, they would have procured a judgment against Hogan while that entity still had assets sufficient to satisfy the judgment" and that the Martons claim that the Citak firm's actions deprived them of the ability to collect pre-award interest. Harwood Reply Decl., Ex. B at 4. These clearly constitute damages.

Plaintiffs also assert that the cases cited by St. Paul in support of its motion to dismiss are inapplicable because those cases involved "irreversible errors" by the attorneys involved. According to plaintiffs, this does not exist here because, despite plaintiffs' repeated failures, the Martons still had time to bring a claim against their contractor and they knew that it any award they received might not be collectable. This, however, is not the appropriate inquiry. The real issue is whether,

9

knowing that they had failed to properly commence an action or arbitration on behalf of the Martons and that the Martons had registered a complaint with the DDC about these failures, the plaintiffs should have anticipated that a claim would be made against them. The clear answer is yes. In addition, as noted above, the court in the malpractice action stated that the Martons have claimed they could have collected from the contractor when it was solvent if not for the actions of the Citak firm and that they have permanently lost the right to pre-award interest. This clearly constitutes irreversible error.

In attempting to distinguish the cases cited by St. Paul, plaintiffs erroneously focus on the facts of each case and compare them to the instant matter. The crux of each of the cases cited in support of St. Paul's motion to dismiss, however, is that the court's apply an objective standard in determining whether an attorney should have expected that a claim would be asserted against him. *See Sirignano v. Chicago Insurance Co.*, 192 F.Supp.2d 199 (S.D.N.Y. 2002); *Ingalsbe v. Chicago Insurance Co.*, 270 A.D.2d 684, 704 N.Y.S.2d 697 (3d Dep't 2000); *Bellefonte Insurance Co. v. Eli D. Albert, P.C.*, 99 A.D.2d 947, 472 N.Y.S.2d 635 (1st Dep't 1984). In the instant case, a reasonable attorney would certainly anticipate a suit against him after failing to properly commence an action for his client and learning that the failure was the subject of a disciplinary complaint. Plaintiff's citation to *Purcigliotti v. Risk Enterprises Management Ltd.*, 240 A.D.2d 205, 658 N.Y.S.2d 296 (1st Dep't 1997) is no more availing. There, the court found that a RICO claim against a law firm and its client, as co-defendants, did not put the firm on notice that its client might assert a cross-claim against it. In *Purcigliotti*, then, there was no prior complaint of negligence or misfeasance against the firm by the client. That is clearly not the case here.

Plaintiffs' reliance on *Fogelson v. Home Ins. Co.*, 129 A.D.2d 508, 514 N.Y.S.2d 346 (1st

Dep't 1987) is also misplaced. Plaintiffs cite *Fogelson* for the proposition that the existence of a disciplinary complaint does not change the criteria for reasonable notice. *Fogelson*, however, does not involve a disciplinary complaint. Moreover, the court noted the merits of a prior act exclusion in a lawyers professional liability policy, citing favorably to a Federal District Court decision holding that requiring retroactive coverage would render it "literally impossible in many cases for the insurer to protect itself when extending insurance to applicants who wished to purchase coverage while concealing past acts which the applicant knew, or had reason to believe, might lead to a claim." *Fogelson*, 129 A.D.2d at 512, 514 N.Y.S.2d at 349, quoting *Brander v. Nabors*, 443 F.Supp. 764, 773 (N.D. Miss (1978) aff'd 579 F.2d 888 (5th Cir. 1978). That is exactly what exclusion G in the St. Paul policy seeks to avoid.

## CONCLUSION

Based upon the foregoing, and its moving papers, St. Paul respectfully submits that it is entitled to an order dismissing the complaint in its entirety, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, along with such other relief the court deems appropriate.

Dated: Hawthorne, New York
       March 10, 2008

                                  TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP

                                  Jonathan R. Harwood (JH 9060)
                                  Attorneys for Defendant The St. Paul Travelers Companies,
                                  Inc. a/k/a St. Paul Fire and Marine Company
                                  Mid-Westchester Executive Park
                                  Seven Skyline Drive
                                  Hawthorne, New York 10532
                                  (914)347-2600

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK            )
                             ) ss.:
COUNTY OF WESTCHESTER        )

Christina Golino, being duly sworn, deposes and says:

That deponent is not a party to the within action and is over 18 years of age.

That on the 10th day of March 2008, deponent served the within **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS** upon the attorney(s) for the respective party(ies) in this action, at the address listed below, such address designated by said attorney for that purpose via **Electronic Case Filing System** .

TO:   Peter Wessel, Esq.
      Law Office of Peter Wessel, PLLC
      270 Madison Avenue, Suite 1203
      New York, New York 10016
      Mineola, New York 11501
      E-mail: Peterwessel@wessellaw.com

                                            _____
                                            CHRISTINA GOLINO

Sworn to before me this
10th day of March 2008

_____
Notary Public

**CLAUDINE N. BONCI**
**Notary Public, State of New York**
**No. 01BO5015056**
**Qualified in Westchester County**
**Commission Expires July 12, 2011**